# Exhibit A

```
 1     UNITED STATES DISTRICT COURT

 2     NORTHERN DISTRICT OF CALIFORNIA

 3     ------------------------X

 4     IN THE MATTER OF:                ORIGINAL

 5     QUINE,

 6                       Plaintiff,

 7                                 Case No.:

 8                                 14-cv-02726-JST

 9            - Vs.

10     BEARD,

11                       Defendant.

12     ------------------------X

13                       July 28, 2015

14     HELD AT:          450 Golden Gate Ave.

15                       San Francisco, CA  94102

16

17     BEFORE:           HONORABLE NANDOR J. VADAS

18                       Judge

19     APPEARANCES:

20     For Plaintiff:    HERMON J. HOYING, ESQ.

21                       MEGAN LIN, ESQ.

22     For Defendant:    JAY C. RUSSELL, DEP ATTY GEN

23                       NED FLUET, DEP ATTY GEN

24                       MARTINE N. D'AGOSTINO, DEP

25                       ATTY GEN
```

1                              THOMAS L. GILEVICH, ASST

2                              CHIEF COUNSEL

3

4          TRANSCRIBER:           DOREEN ANGERMAYR

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | | | RE | RE | V. |
|---|---|---|---|---|---|---|
| WITNESS | DIRECT | CROSS | DIRECT | CROSS | D. | J. |

E X H I B I T S

| | | For | In |
|---|---|---|---|
| PETITIONER | DESCRIPTION | I.D. | Ev. |

```
1        [START 2015_07_28_Settlement_Audio]

2        CLERK:  Good afternoon, everyone.  We're here

3   on Civil Action 14-2726, Quine versus Beard, etal.

4   The Honorable Nandor J. Vadas presiding.  Counsel,

5   will you state your appearances for the record,

6   please?

7        MR. HERMAN HOYING:  Herman Hoying of Morgan,

8   Lewis and Bockius on behalf of the plaintiff.

9        MS. JENNIFER WORTHINE:  Jennifer Worthine

10  [phonetic] for the Transgender Law Center on behalf

11  of the plaintiff.

12       MR. SEAN MERRIKAMPER:  Sean Merrikamper

13  [phonetic] Transgender Law Center, also for the

14  plaintiff.

15       MS. LAURIE BERMUDA:  Laurie Bermuda,

16  Transgender Law Center, also for the plaintiff.

17       MS. ELONA TURNER:  Elona [phonetic] Turner with

18  Transgender Law Center also for the plaintiff.

19       MR. JAY RUSSELL:  Jay Russell for the Attorney

20  General's Office for defendants.

21       MR. EDWARD FLUET:  Edward Fluet from the Office

22  of the Attorney General for defendants.

23       MR. THOMAS GILEVICH:  Tom Gilevich, CDCR for

24  the defendants.

25       THE COURT:  And is Miss Quine on the line?
```

```
 1        MR. HOYING:  We do not have her on the line.
 2        THE COURT:  Do you have authority to settle
 3   this matter on her behalf?
 4        MR. HOYING:  I do.
 5        THE COURT:  My understanding is, Counsel, that
 6   we have a resolution in principle subject to a
 7   drafting of a final settlement agreement to the
 8   satisfaction of the parties.  Is that correct, Mr.
 9   Russell?
10        MR. RUSSELL:  That's correct, Your Honor.  We
11   will do the drafting process and that draft will be
12   subject to review both by CDCR executives as well as
13   the Governor's office.
14        THE COURT:  All right.  Would you state the
15   general terms of the settlement on the record?
16        MR. RUSSELL:  Yes, Your Honor.  We would say a
17   seven part agreement.  The first provision is that
18   plaintiff Shala [phonetic] Quine will be referred
19   for genital sex reassignment surgery to a provider
20   that is approved by an in contract with the receiver
21   appointed in the Pilato litigation.  It's
22   anticipated that that will be the Brownstein Crane
23   Group of Greenbury, California.  Do you want me to
24   go through each of these, Your Honor, and then
25   [crosstalk] afterward?
```

6

1      THE COURT:  Please.

2      MR. RUSSELL:  Okay.  The second provision is

3  that Brownstein Crane will evaluate Ms. Quine for

4  surgery, for genital sex reassignment surgery.

5      The third provision is that if Brownstein Crane

6  finds that Miss Quine is not a candidate for genital

7  sex reassignment surgery, that she will be re-

8  evaluated by a mutually agreeable second surgical

9  team for determination of her eligibility.

10      The fourth provision is that surgery will be

11  performed pursuant to the surgeon's recommendations.

12      The fifth provision is that the surgery will be

13  performed at a facility of Brownstein Crane or the

14  provider's choosing.  It's then anticipated that

15  following the surgery and a recuperative period that

16  will involve a period of hospitalization, that Miss

17  Quine will then be transferred either for further

18  outpatient treatment or for housing at a CDCR

19  institution under correctional criteria applicable

20  to all female inmates.

21      The sixth provision is that Ms. Quine will

22  receive a - - allowing her to order from the

23  property catalog items designated for female inmates

24  consistent with her classification factors.

25      The seventh provision is that CDCR will review

1   and revise policies to allow designated transgender

2   inmates access to all property items regardless of

3   gender designation that are consistent with safety

4   and correctional considerations.  I misspoke, Your

5   Honor.  There's actually nine provisions.

6       The eighth provision is that the Court will

7   retain jurisdiction during the execution of this

8   agreement and that any disputes regarding compliance

9   with the agreement will be provided, will be

10  submitted to Your Honor, Magistrate Judge Vadas, for

11  informal resolution before motion to the District

12  Court.

13      And the ninth provision is that the plaintiffs

14  are to be designated as the prevailing party and may

15  move under the Federal Rules for reasonable

16  attorneys' fees and costs.

17      THE COURT:  Mr. Hoying, is that your

18  understanding?

19      MR. HOYING:  I have one clarification on point

20  seven.  My understanding is that that will be a

21  process in place for the parties to resolve any

22  disputes with regard to items that are not being

23  available based on safety and security concerns?

24      MR. RUSSELL:  Yes, that's correct, Your Honor.

25  I anticipated that that would be part of the Court's

1  continuing jurisdiction of execution, that those

2  will be reviewed by counsel and if there are

3  disputes, that they would be brought to you.

4      MR. HOYING:  And then we also discussed dental

5  for review by counsel of a change in the policy for

6  SRS.  That's currently being considered.

7      MR. RUSSELL:  That--well, that's correct.  I

8  didn't want to make this part of the agreement but

9  CDCR is in the process of reviewing its policies

10  concerning sex reassignment surgery and it's

11  anticipated that they will provide those for comment.

12      THE COURT:  All right.  Based on the

13  clarifications is that your understanding of the

14  disposition in the matter, Mr. Hoying?

15      MR. HOYING:  It is.

16      THE COURT:  And on behalf of your client, are

17  you willing to bind your client to those terms?

18      MR. HOYING:  Subject to approval of the

19  language, yes.

20      THE COURT:  And the final drafting of the

21  agreement?

22      MR. HOYING:  Correct.

23      THE COURT:  Mr. Russell, on behalf of--well,

24  actually that would be Mr. Gilevich on behalf of the

25  CDCR.  Is this your understanding of the settlement

1  agreement?

2      MR. GILEVICH:  Yes, Your Honor.

3      THE COURT:  And is CDCR agreeing to be bound by

4  the terms of this settlement agreement?

5      MR. GILEVICH:  Yes, Your Honor.

6      THE COURT:  All right.  The matter appears to

7  have been settled in full.

8      MR. RUSSELL:  As a housekeeping matter, Your

9  Honor, we have a case management conference

10  scheduled for tomorrow.  Can we have that and

11  further litigation I guess at least stayed until

12  final resolution of this agreement?

13      THE COURT:  That's normally what takes place.

14      MR. HOYING:  I guess I was anticipating that we

15  would address that with Judge Tigar at the status

16  conference tomorrow.  I think that word would need

17  to come from them.  I mean, I agree that we should

18  do that but in terms of the terms of the stay, I

19  think it would be addressed with Judge Tigar.

20      THE COURT:  Generally we do it here.  I mean,

21  that's how it's normally done.  But if the parties

22  want to address Judge Tigar, I'll issue - - .  I

23  mean, normally, now that it's--basically what

24  happens is that if the agreement falls apart, which

25  I don't anticipate, you would go back to Judge Tigar

```
1    further a CMC.
2         MR. HOYING:  Okay.  I think that's fine.
3         THE COURT:  And what I normally would do is
4    that I place this on my civil calendar 30 days to
5    prod the parties into getting the written agreement
6    done and reviewed if there are issues regarding the
7    terms of the settlement agreement that seem to be
8    dissatisfactory to either of the parties or that the
9    parties don't believe was negotiated, then we can
10   attempt to informally resolve the issues of the
11   drafting.  If in fact we're unable to do so, which I
12   don't anticipate, then the matter would go back to
13   Judge Donato--I mean Judge Tigar.
14        MR. HOYING:  Okay, I think that's acceptable.
15   Do you have an estimate of how long it will take to
16   provide a draft of the agreement?
17        MR. RUSSELL:  I don't think this will take too
18   long and I've been advised--I know that sounds
19   really vague but I would imagine, I would like to
20   think that we'll have something to you by the end of
21   next week that's been reviewed by everybody.  It
22   might take, I mean one of the problems is we're
23   getting into some people's holiday schedules at this
24   point but I will keep you advised.  We will move on
25   this as quickly as we possibly can.
```

1      THE COURT:  - - August, would you?

2      FEMALE VOICE:  - - .

3      THE COURT:  That's July.  August.

4      FEMALE VOICE:  - - .

5      THE COURT:  No, we'll want it earlier than that.

6 Just to keep the pressure on everyone, let's just

7 have a status on August 11th, a phone status, see

8 where we are.  That would be at 1:00 p.m.  Just to

9 see where we are with the drafting.

10     MR. RUSSELL:  Your Honor, I'd like to ask, I

11 know we discussed this in chambers, I would like to

12 ask one thing that until such time--I've been asked

13 by executive staff and it needs to be reviewed by

14 the Governor's office and the CDCR--that we hold off

15 on making any announcements regarding the

16 disposition of the case until that's been done.

17     MR. HOYING:  We're in agreement on that.

18     MR. RUSSELL:  Thank you.

19     THE COURT:  I think that's in everyone's best

20 interest.  For right now perhaps, well, no, you

21 can't.  It's the government.  It's the state.  You

22 can't do that.

23     FEMALE VOICE:  All right.

24     MR. RUSSELL:  I apologize, Your Honor, I may

25 have interrupted you.  Were we setting a date to

1   come back--

2       THE COURT:   [Interposing] Well, there will be a

3   phone status as to the settlement agreement on

4   August 11th at 1:00 p.m. and that will be on my

5   regular phone calendar.   All right?

6       Listen everyone, thank you.   This has been

7   difficult.   It's been hard to work some of these

8   issues out and everybody has come in good faith and

9   with good humor and with the understanding that

10  times have changed and these are appropriate changes

11  to CDCR.   I thank CDCR also for their willingness to

12  come to the table today as is the Attorney General,

13  and work to resolve these issues to the benefit of

14  everyone, including those inmates who this will

15  affect dramatically.   Thank you so much.

16      MR. RUSSELL:   Thank you, Your Honor.

17      MR. HOYING:   Thank you, Your Honor.

18      CLERK:   Court is in recess.

19      [END 2015_07_28_Settlement_Audio]

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3        I, Doreen Angermayr, certify that the foregoing

 4   transcript is a true record of said proceedings to

 5   the best of my ability, that I am not connected by

 6   blood or marriage with any of the parties herein nor

 7   interested directly or indirectly in the matter in

 8   controversy, nor am I in the employ of the counsel.

 9

10        Signature

11

12

13        Date:  March 14, 2016

14

15

16

17

18

19

20

21

22

23

24

25
```

# Exhibit B

Exhibit B

## SETTLEMENT AGREEMENT AND RELEASE

### I. PARTIES

This Settlement Agreement and Release (Agreement) is made between SHILOH HEAVENLY (aka Rodney James) QUINE (Plaintiff) and the California Department of Corrections and Rehabilitation (CDCR) on behalf of Defendants BEARD, PAJONG, LEWIS, BRIGHT, and DUNLAP (Defendants). Plaintiff, CDCR, and Defendants are referred to as "the parties." This Agreement covers all of the claims and allegations in the Complaint and any amendments in it against Defendants, whether named or unnamed and whether served or unserved, and any past or current CDCR employees.

### II. RECITALS

Plaintiff filed a complaint in the United States District Court for the Northern District of California, *RODNEY JAMES QUINE v. BEARD, et al.*, Case No. C 14-02726 JST (N.D. Cal.) (the Complaint), seeking an order requiring Defendants to provide Plaintiff with sex-reassignment surgery as a medically necessary treatment for her gender dysphoria and access to property available to CDCR inmates housed in female facilities. Defendants and CDCR deny all allegations of wrongdoing made by Plaintiff in this lawsuit. However, the parties acknowledge that several medical and mental health clinicians, including two independent mental health experts, have determined that sex-reassignment surgery is a medically necessary treatment for Plaintiff. (See Attachments A & B.) No medical or mental health clinician has indicated otherwise. Accordingly, the parties now desire and intend by this Agreement to settle all disputes between them relating in any way to the Complaint's allegations and claims, including any rights to appeal, and to discharge each other from any and all liability with reference to such allegations and claims, except as specifically set forth in this Agreement.

Therefore, in consideration of the covenants set forth in this Agreement, the parties settle their dispute on the terms and conditions set forth below.

### III. TERMS AND CONDITIONS

1.   In full and complete settlement of any and all claims, the parties agree to the following:

> A.  As promptly as possible, Plaintiff shall be referred for genital sex-reassignment surgery to a mutually agreed-upon surgical practice (the surgical practice). CDCR shall negotiate the contract with the surgical practice, who shall provide Plaintiff's genital sex-reassignment surgery.

> B.  The surgical practice shall evaluate Plaintiff for genital sex-reassignment surgery, i.e. surgery to transform the appearance and function of Plaintiff's genitals to appear as female.

> C.  If the surgical practice determines that Plaintiff is not a candidate for genital sex-reassignment surgery, that determination shall be delivered to all parties.

Plaintiff shall then be re-evaluated by a second mutually agreed-upon surgical practice for a second evaluation and surgery.

D. Plaintiff's genital sex-reassignment surgery shall proceed under the surgical practice's recommendations.

E. Following completion of genital sex-reassignment surgery, it is anticipated that Plaintiff will require a period of post-surgery hospitalization and recovery. Following discharge, Plaintiff shall be placed as a female inmate in a CDCR facility that houses female inmates consistent with Plaintiff's custody and classification factors.

F. Plaintiff shall be issued a correctional chrono allowing her access to property items available to CDCR inmates consistent with her custody and classification factors, including property items that are designated as available to female inmates only.

G. CDCR shall review and revise its policies to allow inmates identified by medical or CDCR personnel as transgender or having symptoms of gender dysphoria access to property items available to CDCR inmates consistent with those inmates' custody and classification factors, including property items that are designated as available to a specific gender only. Before those policies are final, Plaintiff shall have the opportunity to comment on its specific language, including provisions that limit certain property because of safety and security concerns. In addition, CDCR is reviewing and revising its policies concerning medically necessary treatment for gender dysphoria, including surgery.

H. The Court shall retain jurisdiction of this litigation while this Agreement's terms are being executed. Any disputes between the parties concerning this Agreement shall first be presented to Magistrate Judge Nandor J. Vadas for informal dispute resolution without prejudice to a party's right to seek formal relief from the Court.

I. Upon execution of all of this Agreement's terms, Plaintiff agrees to dismiss the Complaint with prejudice.

2.     There are no other actions required by Defendants or CDCR to comply with this Agreement. Except as described in Paragraph 1.G. above, any and all actions taken under this Agreement shall be limited in scope and application to this case and Plaintiff only.

3.     Plaintiff shall be entitled to reasonable attorney's fees and costs incurred in this litigation at the rate applicable under the Prison Litigation Reform Act.

## IV. GENERAL RELEASE

4.     By signing this Agreement, the parties intend that it shall be a full and final accord and satisfaction and release from all allegations and claims asserted in the Complaint.

A. By signing this Agreement, Plaintiff releases CDCR, Defendants, California Correctional Health Care Services (CCHCS), whether named or unnamed and whether served or unserved, and any other past or current CDCR and CCHCS employees, including the receiver appointed in *Plata v. Brown*, Case No. C01-1351 TEH (N.D. Cal.), from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint or from this lawsuit.

B. By signing this Agreement, CDCR, Defendants, California Correctional Health Care Services (CCHCS), whether named or unnamed and whether served or unserved, and any other past or current CDCR and CCHCS employees, including the receiver appointed in *Plata v. Brown*, Case No. C01-1351 TEH (N.D. Cal.), release Plaintiff from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint or this lawsuit.

5.      In furtherance of this intention, the parties acknowledge that they are familiar with, and expressly waive, the provisions of California Civil Code section 1542, which states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

6.      This Agreement is the compromise of various disputed claims and shall not be treated as an admission of liability by any of the parties for any purpose. The signature of or on behalf of the respective parties does not indicate or acknowledge the validity or merits of any claim or demand of the other party.

## V. SUCCESSORS AND ASSIGNS

7.      This Agreement shall be binding on the parties and their respective officers, agents, administrators, successors, assignees, heirs, executors, trustees, attorneys, consultants, and any committee or arrangement of creditors organized with respect to the affairs of any such party.

## VI. REPRESENTATIONS AND WARRANTIES

8.      <u>No other consideration</u>. The consideration recited in this Agreement is the only consideration for this Agreement, and no representations, promises, or inducements have been made to the parties, or any of their representatives, other than those set forth in this Agreement.

9.      <u>Execution in counterpart</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.   Execution of further documents.  Each party to this Agreement shall complete, execute or cause to be executed such further and other documents as are necessary to carry out the expressed intent and purpose of this Agreement.

11.   Entire agreement.  This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

12.   No oral modifications or waiver.  No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver.  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

13.   Governing law.  Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

14.   Severability.  Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: 8-7-2015          By: R. Shiloh Quine
                              Shiloh Quine

Dated: _____   By: _____
                              Dr. Jeffrey Beard
                              Secretary, California Department of Corrections and
                              Rehabilitation

          Approved as to form:

Dated: _____   By: _____
                              Herman J. Hoying
                              Morgan, Lewis & Bockius

Dated: _____   By: _____
                              Jay C. Russell, Supervising Deputy Attorney
                              General
                              Counsel for Defendants

10.     Execution of further documents.  Each party to this Agreement shall complete, execute or cause to be executed such further and other documents as are necessary to carry out the expressed intent and purpose of this Agreement.

11.     Entire agreement.  This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

12.     No oral modifications or waiver.  No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver.  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

13.     Governing law.  Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

14.     Severability.  Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: _____     By: _____
                                  Shiloh Quine

Dated: _8/13/15_____     By: _____
                                  Dr. Jeffrey Beard
                                  Secretary, California Department of Corrections and
                                  Rehabilitation

Approved as to form:

Dated: _____     By: _____
                                  Herman J. Hoying
                                  Morgan, Lewis & Bockius

Dated: _____     By: _____
                                  Jay C. Russell, Supervising Deputy Attorney
                                  General
                                  Counsel for Defendants

---

*SHILOH QUINE v. BEARD, et al.*, Case No. C 14-02726 JST
Settlement Agreement and Release

10.     <u>Execution of further documents</u>.  Each party to this Agreement shall complete, execute or cause to be executed such further and other documents as are necessary to carry out the expressed intent and purpose of this Agreement.

11.     <u>Entire agreement</u>.  This Agreement constitutes a single, integrated agreement expressing the entire agreement of the parties, and there are no other agreements, written or oral, express or implied, between the parties, except as set forth in this Agreement.

12.     <u>No oral modifications or waiver</u>.  No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by all the parties.  No waiver of any provision of this Agreement shall be binding unless executed in writing by the party making the waiver.  No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

13.     <u>Governing law</u>.  Unless expressly stated otherwise in this Agreement, the terms, conditions, and provisions of this Agreement are governed by and interpreted under California state law.

14.     <u>Severability</u>.  Should any provision of this Agreement be held invalid or illegal, such illegality shall not invalidate the whole of this Agreement, but the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

The undersigned agree to the above:

Dated: _____     By: _____
                                Shiloh Quine

Dated: _____     By: _____
                                Dr. Jeffrey Beard
                                Secretary, California Department of Corrections and
                                Rehabilitation

Approved as to form:

Dated: 8/07/15             By: _____
                                Herman J. Hoying
                                Morgan, Lewis & Bockius

Dated: August 7 2015       By: _____
                                Jay C. Russell, Supervising Deputy Attorney
                                General
                                Counsel for Defendants

*SHILOH QUINE v. BEARD, et al.*, Case No. C 14-02726 JST
Settlement Agreement and Release

# Exhibit C

Exhibit C

DEPARTMENT OPERATIONS MANUAL

## CHAPTER 5 – ADULT CUSTODY AND SECURITY OPERATIONS

### Article 43 – Inmate Property

### Revised XXXX XX, 2016

[Sections 54030.1 through 54030.16 are unchanged]

54030.17 Inmate Property Matrix

Appendix E

### TRANSGENDER INMATES
### AUTHORIZED PERSONAL PROPERTY SCHEDULE

- Transgender inmates housed at institutions identified in DOM Section 62080.14 may possess the items in the schedule in addition to items already authorized based on their current housing.
- Inmates are permitted to wear solid colors only unless otherwise indicated.
- Inmates are prohibited from possessing, using, or wearing personal clothing items in any shade or tint of green, black, brown, tan, red, or blue unless otherwise indicated.
- All inmates are prohibited from possessing, using, or wearing items which are obscene or which have logos, lettering, pictures which advertise or depict alcohol, gangs, profanity, sex, weapons, drugs, or drug paraphernalia.
- No glass containers.
- Canned items and metal containers are restricted from security Level IV, ASU, and SHU.
- No foil packaged items permitted.
- Products containing phosphates are not allowed.
- Despite the increase in allowable property items, transgender inmates combined volume of state-issued and allowable personal property items shall not exceed of six cubic feet.

| ITEM DESCRIPTIONS<br>With additional requirements and restrictions. | General Population Level I, II and III | | | General Population Level IV | | | SHU /PSU | ASU |
|---|---|---|---|---|---|---|---|---|
| | PRIVILEGE GROUP | | | PRIVILEGE GROUP | | | PRIVILEGE GROUP | |
| | A | B | C | A | B | C | D | D |
| AFTER SHAVE | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 0 |
| BRASSIERES (No metal underwire, lace, strapless, see through, or pushup) (White or gray only) | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| BRIEF/BOXERS (White or gray only) | 10 | 10 | 10 | 10 | 10 | 10 | 6 | 6 |
| PANTIES (No thong, G-string, lace, see-through or pockets). | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| BODY SPLASH (No sprays or pumps.). | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| BLUSH (Natural skin tones only). | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| COTTON BALLS | 400 | 400 | 400 | 400 | 400 | 400 | 0 | 0 |
| EYEBROW PENCIL/EYELINER (Factory sealed. Pencil only, no liquid/ Natural skin tones only, i.e., black or brown in color.) | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| EYE SHADOW KIT (No mirrors. Kit shall not be altered.  Natural skin tones only). | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| FABRIC SOFTENER (Liquid, 1 bottle only-36 oz. Max.) | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| FACE POWDER (10oz. each max.). | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| FACIAL ASTRINGENT (10 oz. each max. no alcohol). | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 0 |
| FACIAL CLEANSER (10oz.  each max.). | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 0 |
| FEMININE HYGIENE WASH | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 0 |
| FOUNDATION (Natural skin tones only). | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| HAIR DRYER/ BLOW DRYER (Not to exceed $25) | 1 | 1 | 0 | 1 | 1 | 0 | 0 | 0 |

1

| ITEM DESCRIPTIONS<br>With additional requirements and restrictions. | General Population Level I, II and III | | | General Population Level IV | | | SHU /PSU | ASU |
|---|---|---|---|---|---|---|---|---|
| | PRIVILEGE GROUP | | | PRIVILEGE GROUP | | | PRIVILEGE GROUP | |
| | A | B | C | A | B | C | D | D |
| **HAIR GEL, SPRAY AND GEL CURL, BRAID SPRAY AND LOCK GEL** | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 0 |
| **HAIR ROLLERS** (non-electric) | 30 | 30 | 30 | 30 | 30 | 30 | 0 | 0 |
| **LIPGLOSS/LIPSTICK/LIPLINER** (Natural skin tone only) | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| **MASCARA** (Factory sealed. Natural skin tone, i.e., black or brown.). | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| **SCRUNCHIES** (Combined total with hair ties) | 10 | 10 | 10 | 10 | 10 | 10 | 0 | 0 |
| **SHOWER BAG** (At Warden's discretion) (Mesh Construction) | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| **SHOWER CAP** (Clear only) | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| **SHOWER PUFFS/LOOFA** | 3 | 3 | 3 | 3 | 3 | 3 | 2<br>WASH CLOTHS ONLY | 0 |
| **TWEEZERS** (Plastic only) | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |

54030.21.7.3 ~~54030.24~~ Revisions  (Back to the original DOM section)
The Deputy Director, DAI, or designee shall ensure the contents of this **Section** are current.

54030.21.7.4 ~~54030.25~~ References (Back to the original DOM section)
PC §§ 2085, 2600, 2601, 5054, 5058, 5061, 5062, 5063.
CCR (15) (3) §§ 3002, 3006, 3010, 3011, 3044, 3064, 3092, 3101, 3102, 3151, 3152, 3161, 3164, 3175(l), and (m), 3190, 3191, 3193, 3287, 3331(c), 3343(g).
ACA Standards 4-4292 through 4-4294.
Case No. 117925, In the Superior Court **of the** State of California for the County of Marin.