1  XAVIER BECERRA
   Attorney General of California
2  JAY C. RUSSELL
   Supervising Deputy Attorney General
3  MARTINE N. D'AGOSTINO
   Deputy Attorney General
4  State Bar No. 256777
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5233
6   Fax:  (415) 703-5843
    E-mail:  Martine.DAgostino@doj.ca.gov
7  *Attorneys for Defendants*
   *S. Kernan, S. Pajong, J. Walker, D. Bright, and J.*
8  *Dunlap*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SHILOH HEAVENLY QUINE, f/k/a RODNEY JAMES QUINE,**<br><br>Plaintiffs,<br><br>v.<br><br>**SCOTT KERNAN, et al.,**<br><br>Defendants. | C 14-02726 JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ORDER GRANTING ENFORCEMENT OF SETTLEMENT AGREEMENT**<br><br>Date: September 12, 2017<br>Time: 2:00 p.m.<br>Dept: 9, 19th Floor<br>Judge: The Honorable Jon S. Tigar<br>Trial Date: N/A<br>Action Filed: 6/12/2014 |

# TABLE OF CONTENTS

**Page**

**THIS IS THE TABLE OF CONTENTS SECTION.
NO TABLE OF CONTENTS ENTRIES WERE FOUND!**

i

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

**TABLE OF AUTHORITIES**

**Page**

ii

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

TO PLAINTIFF SHILOH HEAVENLY QUINE AND HER ATTORNEYS OF RECORD:

Please take notice that on Thursday, September 12, 2017, at 2:00 p.m., or as soon as the matter may be heard before the Honorable Jon S. Tigar, Courtroom 9, 19th Floor of the United States District Court at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants S. Kernan, S. Pajong, J. Walker, D. Bright, and J. Dunlap will move this Court under Federal Rule of Civil Procedure 62(c) for a stay of the Court's April 28, 2017 order. (Order Granting in Part and Denying in Part Plaintiff's Enforcement Motion, ECF No. 116.) This motion is based on this notice and motion, the supporting memorandum of points and authorities, the pleadings, records, and files in this action, and such other matters as may properly come before the Court

**INTRODUCTION**

Defendants have appealed in this matter from a post-settlement enforcement motion brought by Plaintiff which alleged that the California Department of Corrections and Rehabilitation's (CDCR) transgender property policy violates the August 2015 settlement agreement in this case. Consistent with the settlement agreement, CDCR has promulgated emergency regulations allowing transgender inmates and inmates with gender dysphoria access to property that corresponds to their gender identity. Following Plaintiff's motion, the Court issued an order granting the following injunctive relief: (1) the existing property policy must be revised to provide access to items that present safety and security concerns to transgender inmates in all 24 non-"hub" transgender institutions, although transgender inmates are housed in the 11 "hub" institutions; (2) the existing property policy must be revised to include access to pajamas, nightgowns, rovers, scarves, bracelets, earrings, hair brushes, and hair clips; and (3) CDCR must provide compression tops and binders to inmates who cannot afford them, at state expense. (Order, ECF No. 116.) Defendants appealed this order (Not. of Appeal, ECF No. 121), and Plaintiff has cross-appealed. (Not. of Cross-Appeal, ECF No. 123).

Defendants now move this Court for a stay of the order pending the resolution of the appeal and cross-appeal. On balance, the record supports a stay. Absent a stay, dangerous items will be disseminated throughout the prison environment. Defendants' appeal will raise a substantial case

1

for relief on the merits, given that the settlement agreement's express terms prohibit Plaintiff's motion. Additionally, Defendants' appeal will raise the serious legal question – left open in this Circuit – of whether *Turner v. Safley* applies to gender discrimination claims involving prison administration. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Plaintiff will not be harmed by a stay, as she is presently housed in a female institution and has access to all of the disputed property items. And the public interest favors a stay because transgender inmates will benefit from a consistent transgender property policy, and all inmates and staff have a strong interest in a property policy that maintains institutional safety and security. Defendants respectfully request that the stay motion be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) authorizes this Court to suspend or modify a preliminary injunction during the pendency of an appeal from an order granting such relief. A stay is a matter of "judicial discretion" governed by "sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009). The party requesting the stay bears "the burden of showing that the circumstances justify" a stay of the injunction pending appeal. *Id.*; *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). The determination of whether to grant a stay depends on four factors: (1) the likelihood that the stay applicant will succeed on the merits; (2) whether irreparable injury will result absent a stay; (3) whether the issuance of a stay will substantially injure other parties' interest in the proceeding; and (4) the affect on the public interest of the issuance or non-issuance of the stay. *Nken*, 556 U.S. at 434. These factors are weighed on a continuum. At one end, "the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (citations omitted). At the other end, the party seeking the stay "must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.*

## ARGUMENT

**I. LIKELIHOOD OF SUCCESS ON THE MERITS.**

The first factor of the stay analysis requires Defendants to make "a strong showing" that

2

they are "likely to succeed on the merits." *Nken,* 556 U.S. at 434. Courts routinely use different formulations to describe "the exact degree of likely success that stay petitioners must show," such as "a minimum quantum of likely success necessary to justify a stay," a "reasonable probability" or "fair likelihood" of success, or a "a substantial case on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (citations omitted). These formulations are "largely interchangeable," and each indicates that, "at a minimum," Defendants must show that there is "a substantial case for relief on the merits." *Lair,* 697 F.3d at 1204; *Leiva–Perez,* 640 F.3d at 967-68. Alternatively, the moving party may show that the appeal raises "serious legal questions" even if there is only a minimal chance of prevailing on those questions. *Id.* at 968; *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2015 WL 9303979, at *1 (N.D. Cal. Dec. 22, 2015). Often "serious legal questions" are those "that raise[] genuine matters of first impression, or which may otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).) Defendants meet their burden under any iteration of this standard.

**A.   Defendants' Appeal Presents a Substantial Case for Relief on the Merits.**

The August 2015 settlement agreement controls any interpretation of the parties' dispute, and the law is clear that the Court should not look beyond the four corners of the agreement. The agreement states that, "Before [the transgender property] policies are final, Plaintiff shall have the opportunity to comment on its specific language, including provisions that limit certain property items that are designated as available to a specific gender only." (Notice of Settlement, ECF No. 49 at 4.) Therefore, under the agreement's express terms, Plaintiff's rights with respect to the inclusion of specific property items are limited to "the opportunity to comment," which neither party disputes Plaintiff was afforded on multiple occasions.

Plaintiff's motion argued that "the exclusion of particular property items in the proposed policy violates. . .the agreement." (ECF No. 98-1 at 8.) Plaintiff argued, therefore, that the Court should resolve Plaintiff's disagreement with the exclusion of certain items from the property policy. Defendants, on the other hand, argued that the August 7, 2015 settlement agreement

3

between the parties controlled the dispute before the Court and that the Court was obliged to hew to the plain terms of the settlement agreement. (Defs.' Opp'n to Pl.'s Mot. to Enforce, ECF No. 102 at 14.)

Although the Court appeared to agree with Defendants' reading of the express terms of the settlement agreement, the order nevertheless found that because of statements Defendants made at the settlement conference, Plaintiff's interpretation must control. (Order Granting in Part and Denying in Part Plaintiff's Motion to Enforce, ECF No. 116 at 6.) But the agreement contains an integration clause, stating that the agreement "express[es] the entire agreement of the parties, and there are not other agreements, written or oral, express or implied, between the parties." (ECF No. 49 at 6.) The use of extrinsic evidence – here, statements made by Defendants during settlement negotiations – to vary or contradict the contract's express terms, despite the agreement's integration clause, was error. When a contract is integrated, oral or written extrinsic evidence may not be used to "vary or contradict" the contract's express terms. *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC,* 185 Cal. App. 4th 1050, 1061 (2010) (citing Cal. Code Civ. Pro. § 1856; *Cerritos Valley Bank v. Stirling*, 81 Cal. App. 4th 1108, 1115-16 (2000).)[1] This is because "it cannot reasonably be presumed that the parties intended to integrate two directly contradictory terms into the same agreement." *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 271 (1987) (citing *Masterson v. Sine*, 68 Cal. 2d 222, 226 (1968).)

Defendants' appeal will present a substantial case on the merits, and a stay of enforcement of the injunction is warranted.

**B.  Defendants' Appeal Will Raise Serious Legal Questions That Justify a Stay.**

The Court's order raises serious legal questions of first impression in this circuit. Plaintiff's motion argued that "the exclusion of particular property items in the proposed policy violates the Equal Protection Clause." (ECF No. 98-1 at 8.) Defendants contend that Plaintiff, by virtue of having settled and released Defendants from all allegations and claims asserted in the complaint,

---

[1] According to the settlement agreement, the "terms, conditions, and provisions of [the] Agreement are governed and interpreted under California state law." (Not. of Settlement, ECF No. 49 at 6.)

4

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

1 has waived her right to challenge the exclusion of particular property items on constitutional grounds. Nevertheless, Defendants' opposition argued that constitutional claims relating to matters of prison administration must be analyzed under *Turner v. Safley*'s "rational relationship" test. *Turner,* 482 U.S. at 89-91. This test applies even where the allegedly infringed constitutional right would otherwise warrant heightened scrutiny. *See Washington v. Harper*, 494 U.S. 210, 224 (1990) ("We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights.") The Supreme Court has recognized only one exception to the Turner test – the "right not to be discriminated against based on one's race." *Johnson v. California*, 543 U.S. 499, 510 (2005).

The Ninth Circuit has never ruled that gender-discrimination claims are exempted from the *Turner* test. *See Jeldness v.* Pearce, 30 F.3d 1220, 1231 (9th Cir. 1994) (declining to reach the issue). But rather than applying *Turner*'s deferential standard, the Court applied intermediate scrutiny, a more stringent standard generally applied to gender discrimination claims. (ECF No. 116 at 8-9.) The application of intermediate scrutiny to a prison property policy – a quintessential matter of prison administration which requires deference to prison officials – represents a novel legal issue that supports a stay pending appeal. As this Court has noted, a serious legal question of first impression satisfies the likelihood-of-success prong of the stay analysis. *United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, Cal.*, No. 13-CV-02027-JST, 2015 WL 525711, *2 (N.D. Cal. Feb. 6, 2015). Thus, a stay pending appeal is appropriate.

**II.    DEFENDANTS WILL BE IRREPARABLY HARMED ABSENT A STAY.**

    **A.    Inmates in Male Institutions Will Have Access to Property That Compromises Prison Safety and Security.**

Under the injunction, CDCR is required to provide access to pajamas, nightgowns, robes, scarves, bracelets, earrings, hair brushes, and hair clips. (ECF No. 116 at 10-11.) In their opposition, Defendants put forward evidence demonstrating that male and female institutions present different security needs. Specifically, inmates at male institutions commit weapons offenses at twice the rate of inmates at female institutions (1.25 per capita for males and .66 per capita for females). (Miller Decl. Supp. Defs.' Opp'n to Mot. to Enforce, ECF No. 104 at 3; ECF

5

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

No. 104-3.) For this reason, the existing policy does not allow inmates at male institutions access to hair brushes and hair clips because those items have the potential to serve as weapons or weapons stock. Additionally, CDCR limits jewelry permitted in male institutions because small, high value items are a form of currency in prison, and can lead to gambling, gambling debts, and even violence.[2] (ECF No. 104 at 3-4.) Finally, the existing policy does not allow street clothing such as scarves, robes, pajamas, and nightgowns because those items are considered potential escape paraphernalia. (ECF No. 104 at 4.) Escapes are much more prevalent in male institutions: in 2015, there were 22 escapes in male institutions, whereas female institutions had none. (ECF No. 104-3.)

Defendants have put forward evidence demonstrating the safety and security concerns that make a stay prudent. Complying with the court's order while the case is appealed would require CDCR to allow access to these dangerous items at all 31 male prisons, risking wide dissemination throughout the prison environment. As Defendants argued in opposition, and as discussed above, items such as bracelets, earrings, and hair clips are easily concealed from staff. If Defendants' appeal is successful, it would be difficult to retrieve or recall these potentially dangerous items. If Defendants prevail on appeal and these items are removed from the transgender property policy, then inmates would be in possession of contraband items throughout the state prison system and confiscating these potentially dangerous items would be a difficult, if not impossible, task.

**B.  Operational Needs Support Granting the Stay.**

CDCR's operational needs – and by extension, the unique needs of transgender inmates – also justify a stay. The transgender inmate population is very small in comparison with the overall inmate population: presently, CDCR has identified approximately 500 transgender inmates in an overall inmate population of approximately 129,000 inmates. (Miller Decl. ¶ 16.) To accommodate transgender inmates' safety, medical, mental health, and rehabilitative needs,

---

[2] Following meet and confer negotiations between the parties concerning the draft property policy, Magistrate Judge Vadas recommended excluding bracelets, earrings, hair brushes, and hair clips from male institutions because they pose significant safety and security concerns. (Order re: Implementation of Settlement, ECF No. 74 at 2.)

6

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

CDCR has designated 14 institutions to house transgender inmates.[3] (*Id.*) The designated institutions provide resources and training to custody, medical, and mental health staff concerning the needs of transgender inmates and inmates with symptoms of gender dysphoria. (*Id.*) Because the transgender population is comparatively small relative to the overall population, CDCR has devised a method to pool resources for this group of inmates.[4] The Court's order threatens to disrupt the administration of the transgender hub system. By requiring that property items be available to transgender inmates at all institutions, it may discourage inmates from moving to a hub institution, where medical, mental health, and custody staff familiar with transgender inmates are available. It is operationally very difficult for CDCR to administer a system-wide property access policy, and potentially unsafe for transgender inmates. If inmates are not moved to highly-resourced institutions promptly upon being identified as transgender, they will remain at institutions that have fewer resources to address their needs. Thus, these inmates will be harmed in the absence of a stay.

### III. QUINE WILL NOT BE HARMED IN THE ABSENCE OF A STAY BECAUSE SHE IS HOUSED IN A FEMALE INSTITUTION AND HAS ACCESS TO THE DISPUTED PROPERTY ITEMS.

Plaintiff's sex-reassignment surgery was performed on January 5, 2017. (J. Carrick Decl. Supp. Defs.' Opp'n to Mot. to Enforce, ECF No. 106 at 2.) She is currently housed at Central California Women's Facility in Chowchilla, California. (Id.) Accordingly, she has access to property in the same manner as any other female inmate. She will not be harmed by a stay.

In fact, Plaintiff lacks standing to dispute the exclusion of particular property items from the transgender property policy at male institutions. Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. One

---

[3] Currently, the transgender hub facilities for female transgender inmates are Richard J. Donovan Correctional Facility, San Quentin, Mule Creek, Substance Abuse Treatment Facility, California State Prison at Sacramento, Salinas Valley, Kern Valley, California Medical Facility, and California Institution for Men. (*Id.*) CDCR intends to add California Health Care Facility and California Men's Colony as transgender hubs. (*Id.*) Male transgender inmates may be housed at any of the three female facilities.

[4] CDCR's existing transgender hub system in no way conflicts with the settlement agreement, which contains no term limiting or restricting how CDCR chooses to manage its transgender inmate population.

7

Defs.' Mot. to Stay Pending Appeal (C 14-02726 JST)

element of the case or controversy requirement is that plaintiffs must establish that they have standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citations omitted). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 185 (2000). Because Plaintiff cannot establish that she is injured by the transgender property policy for male institutions, she cannot demonstrate standing to raise her claims, and will not be harmed by a stay.

## IV. THE PUBLIC INTEREST FAVORS A STAY.

The public interest inquiry primarily addresses impact on non-parties rather than parties. *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003). Here, transgender inmates have an interest in a prolongation of the existing transgender property policy, approved on an emergency basis on April 28, 2017. The current policy will expire on October 5, 2017 if not made permanent, and permanent regulations can take up to a year to promulgate. Accordingly, there is a strong public interest in maintaining the existing policy pending appeal of the enforcement order. If CDCR were required to promulgate emergency or permanent regulations incorporating the disputed items, transgender inmates' present access to property under the existing policy could end, given the timing of the rulemaking process. And if CDCR prevails in its appeal after having promulgated regulations that include the disputed items, transgender female inmates in male institutions would be in possession of contraband items, subject to confiscation by staff. All inmates and staff have a strong interest in a property policy that maintains institutional safety and security. A stay of the order allowing potentially dangerous property into male prisons promotes this important public interest.

## CONCLUSION

Defendants' appeal presents a strong case on the merits and raises substantial legal questions. Absent a stay, dangerous items will be permitted in the prison environment, and transgender inmates may not have access to medical, mental health, and rehabilitative resources

8

that they need. Plaintiff will not be harmed by a stay because she is housed in a female institution and already has access to all property items, and the public interest in providing immediate access to non-disputed property items to transgender inmates will be served. Therefore, Defendants' motion for a stay pending appeal should be granted.

Dated: July 20, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/s/ Martine N. D'Agostino*
MARTINE N. D'AGOSTINO
Deputy Attorney General
*Attorneys for Defendants*
*S. Kernan, S. Pajong, J. Walker, D. Bright, and J. Dunlap*

SF2015400052
21004602.doc

9