CHRISTOPHER J. BANKS (Bar No. 218779)
PHILLIP J. WIESE (Bar. No. 291842)
MEGAN D. LIN (Bar No. 298267)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone:   415.442.1000
Facsimile:   415.442.1001
christopher.banks@morganlewis.com
phillip.wiese@morganlewis.com
megan.lin@morganlewis.com

ILONA M. TURNER (Bar No. 256219)
SHAWN THOMAS MEERKAMPER (Bar No. 296964)
FLOR BERMUDEZ (pro hac vice)
TRANSGENDER LAW CENTER
1629 Telegraph Ave, Suite 400
Oakland, CA 94612
Telephone:   415.865.0176
Facsimile:   877.847.1278
ilona@transgenderlawcenter.org
shawn@transgenderlawcenter.org
flor@transgenderlawcenter.org

*Attorneys for Plaintiff*
SHILOH QUINE (A/K/A RODNEY QUINE)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHILOH QUINE (A/K/A RODNEY JAMES QUINE),<br><br>          Plaintiff,<br><br>     vs.<br><br>,<br><br>          SCOTT KERNAN et al.,. | Case No. 3:14-cv-02726-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY ORDER GRANTING ENFORCEMENT OF SETTLEMENT AGREEMENT**<br><br>Date:     September 12, 2017<br>Time:     2 p.m.<br>Judge:    Jon S. Tigar |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY  3:14-
CV-02726-JST

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1
II. LEGAL STANDARD ............................................................................................... 3
III. CDCR HAS NOT DEMONSTRATED THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL .............................................................................. 3
    A. CDCR's Appeal Does Not Raise Novel Legal Issues ................................. 5
IV. CDCR HAS NOT ESTABLISHED THAT IT WILL BE IRREPARABLY HARMED ................................................................................................................... 8
    A. This Court Has Already Rejected CDCR's Safety And Security Justifications ................................................................................................. 8
    B. CDCR's Operational Harm Argument Is Unpersuasive And Speculative ............. 9
    C. CDCR Does Not Even Attempt To Establish Irreparable Harm If It Must Provide State-Issued Compression Tops And Binders ...................... 11
V. THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR ........................... 11
VI. PUBLIC INTEREST DOES NOT SUPPORT A STAY ....................................... 12
VII. CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alliance for Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)..................................................................................................3

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005)....................................................................................................6

*Chavez v. Credit Nation Auto Sales, LLC*,
641 Fed. Appx. 883 (11th Cir. 2016)........................................................................................5

*Clark v. Cty. of Placer*,
923 F. Supp. 1278 (E.D. Cal. 1996)..........................................................................................8

*Dodds v. United States Dep't of Educ.*,
845 F.3d 217 (6th Cir. 2016)....................................................................................................5

*Elrod v. Burns*,
427 U.S. 347 (1976)................................................................................................................12

*First Nat. Mortg. Co. v. Fed. Realty Inv. Trust*,
631 F.3d 1058 (9th Cir. 2011)..................................................................................................4

*Fox Broadcasting Co., Inc. v. Dish Network LLC*,
747 F.3d 1060 (9th Cir. 2014)................................................................................................11

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011)................................................................................................5

*Greene v. Tilton*,
No. 2:09-CV-0793 JAM JFM, 2012 WL 691704 (E.D. Cal. Mar. 2, 2012).............................6

*Hook v. Ariz., Dept. of Corrections*,
972 F.2d 1012 (9th Cir. 1992)................................................................................................12

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007)................................................................................................10

*Leinweber v. Tilton*,
No. 1:09-CV-0793, 2010 WL 3521869 (E.D. Cal. Sept. 8, 2010)............................................6

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011).............................................................................................8, 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

ii

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY   3:14-
CV-02726-JST

# TABLE OF CONTENTS
(continued)

Page

*McLain v. Great American Ins. Cos.*,
  208 Cal. App. 3d 1476 (1989) ............................................................................................5

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ............................................................................................13

*Meneses v. U-Haul Int'l., Inc.*,
  No. C-11-03615 DMR, 2012 WL 669518 (N.D. Cal. Feb. 29, 2012) .............................12

*Nken v. Holder*,
  556 U.S. 418 (2009) ...........................................................................................................3

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage and Rigging Co.*,
  69 Cal. 2d 33 (1968) ......................................................................................................4, 5

*Parks v. Watson*,
  716 F.2d 646 (9th Cir. 1983) ..............................................................................................8

*Perry v. Sindermann*,
  408 U.S. 593 (1972) ...........................................................................................................8

*Roberts v. Clark Cty. Sch. Dist.*,
  215 F.Supp.3d 1001, 1014 (D. Nev. 2016), reconsideration denied, No. 2:15-
  CV-00388-JAD-PAL, 2016 WL 6986346 (D. Nev. Nov. 28, 2016) .................................5

*Schwenk v. Hartford*,
  204 F.3d 1187 (9th Cir. 2000) ............................................................................................5

*Smith v. City of Salem*,
  378 F.3d 566 (6th Cir. 2004) ..............................................................................................6

*Stevens v. Williams*,
  No. CV-05-1790-ST, 2008 WL 916991 (D. Or. Mar. 27, 2008) .......................................6

*Turner. Johnson v. California*,
  543 U.S. 499 (2005) ..................................................................................................5, 6, 7

*United States v. Raines*,
  362 U.S. 17 (1960) ...........................................................................................................13

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
  858 F.3d 1034 (7th Cir. 2017) ............................................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

iii

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY  3:14-
CV-02726-JST

## I. INTRODUCTION

The Court should deny the California Department of Corrections and Rehabilitation's ("CDCR") Motion to Stay the Order Granting In Part And Denying In Part Motion To Enforce. On April 28, 2017, this Court granted in part Plaintiff Shiloh Quine's motion to enforce the Settlement Agreement ("Agreement," ECF No. 49) and, with respect to transgender inmates and inmates with symptoms of gender dysphoria, ordered CDCR to:

- Revise its property policies to allow mental health staff to independently allow access to gender-restricted items;

- Revise its property policies to provide access to gender-affirming items at all institutions, not just "hub" institutions;

- Revise its property policy to include access to pajamas, nightgowns, robes, scarves, bracelets, earrings, hair brushes and hair clips; and

- Provide state-issued compression tops and binders. (See Order on Motion to Enforce ("Order") (ECF No. 116).)

In support of its motion to stay, CDCR relies heavily on arguments this Court already considered and rejected when it ruled on Plaintiff's motion to enforce. For this reason, and as explained in more detail below, the Court should deny the stay.

First, CDCR fails to show that it is likely to succeed on the merits based on the groundless argument that under the Agreement, Plaintiff has the right to "comment on" but not "dispute" CDCR's proposed property policy. But the plain language of the Agreement is clear that this Court retained jurisdiction, that "*[a]ny* disputes between the parties" were to be brought to Magistrate Judge Vadas, and "without prejudice to a party's right to seek formal relief from the Court." (Agreement at III.1.H). Further, in interpreting the Agreement, the Court properly considered all credible evidence of the parties' intent—including CDCR's in-court representation, which made clear that "Plaintiff could dispute the exclusion of particular property items from CDCR's policy and bring any unresolved disputes to the Court for resolution." (Order 7:11-15.) Further, regardless of the scope of Plaintiff's rights to "comment" under the Agreement, this Court also found that CDCR has not fulfilled its obligation to adequately "revise its policies," and CDCR does not even attempt to address this finding that independently supports the Court's

1   order.

2   Second, CDCR's appeal does not raise any "serious legal questions of first impression in
3   this circuit" (Mot. 4:22) that would justify a stay. As this Court explained, "the Supreme Court
4   has exempted racial classifications in prison from the Turner test" and "gender classifications,
5   too, are exempt" because the right not to be discriminated against based on one's gender is "'not a
6   right that need necessarily be compromised for the sake of proper prison administration.'" (Order
7   8:10-19 (quoting Johnson v. California, 543 U.S. 499, 510 (2005).)  The overwhelming weight of
8   legal authority applies intermediate scrutiny to equal protection claims brought by transgender
9   plaintiffs, and district courts throughout the Ninth Circuit have applied this well-established rule
10  to gender discrimination in the prison context notwithstanding Turner v. Safley, 482 U.S. 78, 89
11  (1987). CDCR has not identified a single case in this Circuit or any other Circuit finding
12  otherwise. Moreover, Plaintiff has not waived her right to challenge the constitutionality of the
13  revised property policies by entering into the Agreement; CDCR may not condition a government
14  benefit on the waiver of any constitutional rights.

15  Third, CDCR fails to show it will be irreparably harmed absent a stay. CDCR's argument
16  that it will be irreparably harmed if "these dangerous items [are] disseminated throughout the
17  prison environment" (Mot. 1:26-27) relies on a premise that has been considered and rejected by
18  this Court—that these items at issue are in fact dangerous. This Court found CDCR's safety and
19  security concerns about each of the disputed items "unconvincing" (see Order 9:27-12:10), and
20  CDCR does not offer any evidence that this finding was erroneous. CDCR's second argument
21  that it will suffer irreparable harm because it will be operationally more difficult to implement its
22  revised property policy across all institutions—as opposed to only in "hub" institutions—is
23  unsupported by the evidence and is purely speculative. Finally, CDCR does not even attempt to
24  establish that it will be irreparably harmed if it must provide state-issued compression tops and
25  binders to transgender inmates and inmates with symptoms of gender dysphoria. Thus, CDCR
26  fails to prove irreparable harm with respect to that portion of the Court's Order.

27  Fourth, the motion fails because CDCR has not shown that the balance of equities tips in
28  its favor (much less, sharply in its favor, as is required if CDCR cannot prove a likelihood of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

2

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

1  success on the merits) or that a stay is in the public interest.  The deprivation of gender-affirming
2  property items to transgender people in prison is an irreparable harm that outweighs any
3  speculative harm to CDCR.  Moreover, there is no public interest in denying transgender inmates
4  access to gender-affirming property and in causing continued suffering during the pendency of
5  the appeal.
6       The Court should deny CDCR's motion for a stay pending appeal.

## II.     LEGAL STANDARD

CDCR "bear[s] the burden of showing that the circumstances justify" an exercise of the Court's discretion to grant a stay.  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  In deciding whether to exercise this discretion, courts balance four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Id*. at 434.     Alternatively, if the movant cannot demonstrate a likelihood of success on the merits, the court may grant a stay if the movant shows there are "serious legal questions" going to the merits.  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  The movant must then, however, also show that the balance of hardships that tips ***sharply*** towards the movant.  *Id*. (emphasis added).  Further, the movant must still satisfy the other two *Nken* factors by showing that there is a likelihood of irreparable harm absent a stay and that the stay promotes the public interest.  *Id*. CDCR fails in all facets.

## III.    CDCR HAS NOT DEMONSTRATED THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL.

CDCR does not present a case, much less a "substantial case," for relief on the merits because its appeal principally relies on the faulty premise that Plaintiff may merely "comment" on—but not dispute—CDCR's policies as to specific property items.  (Mot. 3:16-4:20.) However, both the plain language of the Agreement and CDCR's prior representations to this Court expressly contradict this claim.

First, regardless of the scope of Plaintiff's rights to "comment" under the Agreement, the

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 31773837.2

3

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

1  CDCR has failed to adequately "'revise its policies.'"  (Order 7:16-24 (quoting Agreement at
2  III.1.G)).  Specifically, the Court found that Plaintiff's arguments in its motion to enforce could
3  be "reasonably viewed as an argument that CDCR failed to adequately 'revise its policies'" and
4  "Plaintiff clearly has the right to enforce that provision" of the Agreement.  (Order 7:19-22.)
5  CDCR does not even challenge this finding and thus, CDCR cannot demonstrate a likelihood of
6  success on the merits.

7  Further, CDCR "represent[ed] in open court at the settlement conference that Plaintiff
8  could dispute CDCR's policy on particular property items."  (Order 6:25-7:5.)  Accordingly, this
9  Court found that "[b]oth due to defense counsel's representation to Judge Vadas [at the settlement
10 conference] and the plain language of the Agreement," it is proper to "consider Plaintiff's
11 arguments related to specific property items."  (*Id*. 7:22-24.)

12 CDCR argues that the statements made at the settlement conference should not be
13 considered because "the Court should not look beyond the four corners of the agreement."  (Mot.
14 3:18.)  CDCR asserts that because the Agreement contains language that is allegedly
15 unambiguous—namely, that Plaintiff only has the "opportunity to comment" on the revised
16 policies—Plaintiff cannot dispute CDCR's property policies.  (Id. 3:22-24.)

17 This Court has already rejected this argument when it properly concluded that CDCR's
18 counsel's representations "make[] clear that CDCR agreed to bring disputes about specific
19 property… before the Court."  (Order 7:11-12.)  "California has long abandoned a rule that would
20 limit the interpretation of a written instrument to its four corners."  *First Nat. Mortg. Co. v. Fed.*
21 *Realty Inv. Trust*, 631 F.3d 1058, 1066 (9th Cir. 2011).  "Although extrinsic evidence is not
22 admissible to add to, detract from, or vary the terms of a written contract, these **terms must first**
23 **be determined** before it can be decided whether or not extrinsic evidence is being offered for a
24 prohibited purpose*.*"  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage and Rigging Co.*, 69 Cal.
25 2d 33, 39 (1968) (emphasis added).  Thus, "[t]he test of admissibility of extrinsic evidence to
26 explain the meaning of a written instrument is not whether it appears to the court to be plain and
27 unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to
28 which the language of the instrument is reasonably susceptible."  *Id*. at 37.  "Accordingly, rational

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

4

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." Id. at 39-40.  Extrinsic evidence is also admissible to prove a reasonably susceptible meaning of a contract even where, as here, the contract contains an integration clause. *See McLain v. Great American Ins. Cos.*, 208 Cal. App. 3d 1476, 1485-86 (1989) (quoting *Drayage*, 69 Cal. 2d at 37).

Thus, even assuming that the language of the Agreement is unambiguous, the Court may undertake a "preliminary consideration of all credible evidence" to interpret what the parties meant by "opportunity to comment" on the property policies.  Pac. Gas & Elec. Co., 69 Cal. 2d at 39-40.  One "reasonably susceptible" interpretation is that Plaintiff has the right to challenge CDCR's property policies in court, under the court's continuing jurisdiction over the Agreement. Accordingly, this Court correctly considered the credible evidence of defense counsel's representations to the Court and plaintiff's counsel at the settlement conference in concluding that it is proper to "consider Plaintiff's arguments related to specific property items." (Order 7:23-24.)

### A. CDCR's Appeal Does Not Raise Novel Legal Issues.

In the absence of proof that CDCR is likely to succeed on appeal, CDCR contends the Order should be stayed because the appeal raises "serious legal questions of first impression." (Mot. 4:22.)  CDCR contends that "[t]he Ninth Circuit has never ruled that gender-discrimination claims are exempted from the Turner test" and therefore this appeal raises "a novel legal issue that supports a stay pending appeal." (*Id*. 5:10-19.) [1]

---

[1] CDCR does not contest that like other forms of sex discrimination, gender identity discrimination is subject to intermediate scrutiny.  Rather, CDCR contests the specific legal question as to whether *Turner* applies to an equal protection claim based on gender discrimination in the prison context.  This Court correctly found that discrimination against transgender individuals is a form of gender-based discrimination subject to intermediate scrutiny.  (Order 9:21-22); *see also Schwenk v. Hartford*, 204 F.3d 1187, 1198-1203 (9th Cir. 2000); *Roberts v. Clark Cty. Sch. Dist.*, 215 F.Supp.3d 1001, 1014 (D. Nev. 2016), reconsideration denied, No. 2:15-CV-00388-JAD-PAL, 2016 WL 6986346 (D. Nev. Nov. 28, 2016); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048–49 (7th Cir. 2017); *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. Appx. 883, 884 (11th Cir. 2016); *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016); *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir. 2011); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004); *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005).

1    Although the Ninth Circuit has not decided this specific issue, district courts in the Ninth
2    Circuit—including this Court—have uniformly found that intermediate scrutiny applies to
3    gender-discrimination claims in the prison context. In other words, there is no conflict in the
4    lower courts and instead, courts have been consistently applying well-established law to find that
5    heightened scrutiny, which is traditionally applied to gender discrimination claims, is appropriate
6    in the prison setting.

7    The rule that intermediate scrutiny applies to gender-based classification in the prison
8    context derives from well-established law. Under *Turner v. Safley*, "when a prison regulation
9    impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to
10   legitimate penological interests." 482 U.S. 78, 89 (1987). However, in 2005, the Supreme Court
11   found that equal protection claims based on racial discrimination must be analyzed under the
12   strict scrutiny standard, notwithstanding *Turner*. *Johnson v. California*, 543 U.S. 499, 509
13   (2005). The Supreme Court reasoned that the right to be free from racial discrimination "is not a
14   right that need necessarily be compromised for the sake of proper prison administration. On the
15   contrary, compliance with the Fourteenth Amendment's ban on racial discrimination is not only
16   consistent with proper prison administration, but also bolsters the legitimacy of the entire criminal
17   justice system." *Id*. at 500.

18   Applying the same reasoning, lower courts in this Circuit have applied intermediate
19   scrutiny to gender-based claims brought by prisoners. *See*, *e.g.*, *Greene v. Tilton*, No. 2:09-CV-
20   0793 JAM JFM, 2012 WL 691704, at *8 (E.D. Cal. Mar. 2, 2012), *report and recommendation*
21   adopted, No. 2:09-CV-0793 JAM JFM, 2012 WL 1130602 (E.D. Cal. Mar. 29, 2012) (in a similar
22   case relating to CDCR's discriminatory property policies, the court found that "the right to be free
23   of gender discrimination is a right that need [not] necessarily be compromised for the sake of
24   proper prison administration" (internal quotation marks omitted)); *Leinweber v. Tilton*, No. 1:09-
25   CV-0793, 2010 WL 3521869, at *3 (E.D. Cal. Sept. 8, 2010) (noting that "a classification of
26   gender must be substantially related to a sufficiently important governmental interest"); *Stevens v.
27   Williams*, No. CV-05-1790-ST, 2008 WL 916991, at *13 (D. Or. Mar. 27, 2008) (finding that
28   "sex based classifications are justified only if substantially related to an important governmental

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

6

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

objective and a party seeking to uphold government action based on sex must establish an exceedingly persuasive justification for the classification" (internal quotation marks omitted)).

Consistent with this authority, this Court properly concluded "that gender classifications . . . are exempt from the Turner test." (Order 8:18-19.) As this Court previously recognized in *Norsworthy v. Beard*—which likewise involved an equal protection claim brought by a transgender inmate—"discrimination against transgender individuals is a form of gender-based discrimination subject to intermediate scrutiny." 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015). Here, the Court further analyzed the "'dangers of gender discrimination [that] emphasize[] the need for heightened scrutiny'" and properly found that CDCR had "offered no reason to set aside these dangers and apply Turner's rational relationship test to the proposed property policy." (Order 9:6-21 (quoting *Pitts v. Thornburgh*, 866 F.2d 1450, 1454-55 (D.C. Cir. 1989)). CDCR offers no additional reasons in its motion to stay, and cites no case applying *Turner* to gender-discrimination claims in the prison context.

CDCR further argues that because Plaintiff settled the case, Plaintiff waived her right to challenge the constitutionality of the revised property policies.[2] (Mot. 4:24-5:2.) The Agreement, as well as on-the-record conversations before Magistrate Judge Vadas, provided Plaintiff an express right to challenge the property policies. See *supra* Section III.A. This includes any challenges as to whether CDCR is violating its constitutional duties by failing to comply with the Fourteenth Amendment, the same types of challenges Plaintiff raised with Magistrate Judge Vadas without objection. CDCR's own argument all but concedes that constitutional standards must govern the terms of its revised property policy. Once the issue of whether Plaintiff has any right at all to raise particular excluded items is settled (and this Court has settled that issue repeatedly), the only question left is which constitutional standard should apply. CDCR maintains, without merit, that the *Turner* standard should apply. Yet given that this Court has ruled repeatedly that intermediate scrutiny must apply. Accordingly, intermediate scrutiny should apply to gender-discrimination claims in the prison context.

---

[2] Plaintiff notes that CDCR did not raise this issue in response to Plaintiff's motion to enforce the Agreement. CDCR now improperly seeks another chance to raise the issue.

Further, CDCR's argument violates the doctrine of unconstitutional conditions, which forbids the confiscation of constitutional rights as collateral for government benefits. *See Parks v. Watson*, 716 F.2d 646, 650 (9th Cir. 1983) (noting that "the government may not impose a choice between the government benefit and the exercise of a constitutionally guaranteed right"); *see also Clark v. Cty. of Placer*, 923 F. Supp. 1278, 1287-88 (E.D. Cal. 1996) (finding that the government could not require a female race car driver to give up her right to sue on equal protection grounds in exchange for being allowed to race); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (the government may not "deny a benefit to a person on a basis that it infringes on [her] constitutionally protected interests"). Here, CDCR is essentially arguing that Plaintiff gave up her right to challenge the constitutionality of the Agreement as well as her access to the court in exchange for receiving medically-necessary surgery. Nothing in the Agreement suggests Plaintiff gave up those rights, nor could she have, without violating the longstanding doctrine of unconstitutional conditions. The state may not justify unconstitutional policies or actions simply by pointing to a contract, and any ambiguities in the Agreement should be interpreted such that the state's actions under it must comply with Constitutional mandates.

## IV.  CDCR HAS NOT ESTABLISHED THAT IT WILL BE IRREPARABLY HARMED.

In order to obtain a stay, a movant must show that it will suffer irreparable harm, regardless of the strength of the other stay factors. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). Here, CDCR fails to establish any irreparable injury it will suffer if the stay is not granted. CDCR's speculative administrative, safety, and security concerns do not justify a stay. The Court already has rejected these purported concerns as a basis for granting Plaintiff's motion to enforce.

### A.  This Court Has Already Rejected CDCR's Safety And Security Justifications.

To argue that it will be irreparably harmed by the Court's Order granting in part Plaintiff's motion to enforce, CDCR relies on the same safety and security justifications this Court has already considered and rejected as "unconvincing." (Order 9:27-11:23.) The evidence supports the Court's findings and CDCR introduces no additional evidence to support any specific safety

or security concern that would allegedly result from allowing transgender inmates access to the property items at issue.

CDCR raises the same "unconvincing" safety and security concerns that it raised in opposition to Plaintiff's motion to enforce with respect to: (a) hair brushes and hair clips (Mot. 6:1-2), (b) bracelets and earrings (Mot. 6:3-5), and (c) scarves, robes, pajamas, and nightgowns (Mot. 6:5-9). CDCR fails to establish any flaws in the Court's prior finding that each of these items can be made safe. CDCR offers no evidence to support its safety and security concerns other than what was offered in its papers and declarations on the motion to enforce. Accordingly, for the same reasons CDCR lost on Plaintiff's motion to enforce on each of these issues, it loses here.

CDCR also argues that absent a stay, these "potentially dangerous" items will be "disseminated throughout the prison environment" and it would be "difficult to retrieve or recall these potentially dangerous items" should CDCR prevail on appeal. (Mot. 6:10-18; *see also* Mot. 1:26-27.) This argument assumes CDCR will prevail on appeal; but as explained above, CDCR has not shown a likelihood of success on the merits of its appeal. Further, any purported burden is low. This court has found that the items in question are not dangerous. Additionally, CDCR has acknowledged, "[t]he transgender inmate population is very small" (Mot. 6:21.) and that transgender people are housed predominantly at the 11 "hub" institutions (ECF. No. 102 at 4-5).[3]

### B. CDCR's Operational Harm Argument Is Unpersuasive And Speculative.

Other than concluding that it will be "operationally very difficult for CDCR to administer a system-wide property access policy" (Mot. 7:9-10), CDCR does not offer any argument as to why or how revising its property policies to provide access to the above-specified items at all institutions would harm CDCR.

CDCR contends that it pools its resources by designating "hub" institutions to "provide resources and training to custody, medical, and mental health staff concerning the needs of

---

[3] Although Plaintiff does not believe these property items could be considered contraband, CDCR already searches for, locates, and confiscates contraband items as part of its regular operations activities. The idea that continuing to perform such regular duties amounts to irreparable harm is novel yet unfounded.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

9

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

transgender inmates and inmates with symptoms of gender dysphoria." (Mot. 7:1-5.)  But CDCR has not offered any evidence regarding what efficiencies and savings—if any—it gains from "pooling" resources.  Nor has it specified what harms might befall it if it were to extend those resources to all institutions.  *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.").

To the contrary, a system-wide approach would simplify CDCR's administration of its property policy by providing property items to all transgender inmates or inmates having symptoms of gender dysphoria, regardless of where they are housed.  CDCR itself admits that "transgender inmates will benefit from a consistent transgender property policy." (Mot. at 2:6-7.)

CDCR argues that transgender inmates have specific "safety, medical, mental health, and rehabilitative needs" that required CDCR to designate 14 institutions to house transgender inmates. (Mot. 6:24-7:1.)  However, many transgender or gender nonconforming inmates are housed outside of the 14 hub facilities for a variety of reasons—they may receive medical or mental health care that requires them to be housed elsewhere; they may not be comfortable disclosing their transgender status; or they may experience significant gender dysphoria without having the knowledge or language to express those feelings. (*See*, *e.g.*, Declaration of Ilona M. Turner in Support of Plaintiff's Motion to Enforce Settlement Agreement, ECF No. 101 ¶ 5.)  For this reason, this Court found that the Agreement "does not allow CDCR to limit its proposed property policy only to those inmates residing at one of the designated 'hub' institutions for inmates with a formal diagnosis." (Order 4:19-21.)

CDCR next argues that the Order "may discourage inmates from moving to a hub institution" where they can get the resources they need. (Mot. 7:7-9.) This makes no sense; inmates do not choose where to live or move.  In fact, CDCR is solely responsible for determining in which institution each inmate will reside.  CDCR also argues that "inmates will be harmed" (Mot. 7:10-13), but this is not alleged harm to CDCR and, as explained above, transgender inmates or gender nonconforming *inmates* who are not housed at one of the hub institutions would be harmed by this divisive policy.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

10

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

### C. CDCR Does Not Even Attempt To Establish Irreparable Harm If It Must Provide State-Issued Compression Tops And Binders.

Because CDCR fails to even argue that it will be irreparably harmed if it must provide state-issued compression tops and binders to transgender inmates and inmates with symptoms of gender dysphoria, it fails to make the necessary showing to obtain a stay with respect to that portion of the Court's Order. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (there is a "bedrock requirement that stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors").[4]

### V. THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR.

If CDCR shows the appeal raises a novel legal question—it has not—CDCR must still show that the balance of hardships tips sharply in its favor. CDCR has not made that strong showing and in fact never acknowledges this burden. *See Fox Broadcasting Co., Inc. v. Dish Network LLC*, 747 F.3d 1060, 1066 n.2 (9th Cir. 2014) ("Because [plaintiff] does not argue that the balance of hardships tips sharply in its favor, we do not consider its claims under this [serious legal question] standard."). CDCR has not met even the lesser standard of showing the balance of hardships tips in its favor at all.

CDCR asserts that Plaintiff will not be harmed because she is already housed in a female institution and "has access to property in the same manner as any other female inmate." (Mot. 7:17-19.) This minimization of Plaintiff's harm fails to consider the harm caused to all the other inmates for whom the property policies must also be updated. CDCR committed to updating its property policies to allow *all* inmates identified as transgender or having symptoms of gender dysphoria to have access to property items consistent with their gender. (Agreement at III.2. ("*Except as described in Paragraph 1.G above* [relating to the property policies], any and all actions taken under this Agreement shall be limited in scope and application to this case and Plaintiff only." (emphasis added)). This deprivation of property items to those prisoners is an immediate and irreparable harm. *See Norsworthy*, 87 F. Supp. 3d at 1193; *see also Elrod v.*

---

[4] Any alleged cost would most likely be low because as CDCR acknowledges, "[t]he transgender inmate population is very small." (Mot. 6:21.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

11

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

1  *Burns*, 427 U.S. 347, 373 (1976) (finding that the loss of constitutional freedoms, "for even
2  minimal periods of time," unquestionably constitutes harm). The harm faced by other
3  transgender inmates cannot be so easily overlooked by CDCR.
4      CDCR also raises, for the first time, the issue of standing. It claims that Plaintiff no
5  longer has standing to dispute property issues related to men's institutions. (Mot. 7:20-21.) This
6  is plainly wrong. Enforcement of a settlement agreement is governed by principles of contract
7  law. *See Hook v. Ariz., Dept. of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992). A party to the
8  settlement agreement "has standing to bring a motion to enforce that agreement," *Meneses v. U-*
9  *Haul Int'l., Inc.*, No. C-11-03615 DMR, 2012 WL 669518, at *5 (N.D. Cal. Feb. 29, 2012),
10 especially where, as here, the court specifically retained jurisdiction to hear any disputes about
11 the Agreement. (Agreement at III.1.H.) Plaintiff maintains standing to enforce the Agreement
12 she entered into with CDCR. CDCR cannot now claim that she lost that right merely because she
13 now finally has access to women's property items; CDCR's contractual obligation to her
14 survives. Importantly, as discussed above, the Agreement was broad in its description of the
15 scope of the property policies that CDCR must update. The Agreement was not limited to only
16 the property policies that impacted Plaintiff in her particular situation—women's property items
17 in a men's prison. Instead, the Agreement is by its plain terms more general, requiring CDCR to
18 update its property policies for all transgender inmates or those having symptoms of gender
19 dysphoria.
20     Far from tipping sharply toward CDCR and its request for a stay, the balance of hardships
21 tips towards Plaintiff and the other inmates for whose benefit the property policies must be
22 updated.

23 **VI.   PUBLIC INTEREST DOES NOT SUPPORT A STAY.**
24     CDCR argues that "transgender inmates will benefit from a consistent transgender
25 property policy." (Mot. 2:6-7.) Plaintiff agrees that a consistent policy across all institutions that
26 allows transgender inmates, and those experiencing symptoms of gender dysphoria, access to
27 state-issued property items consistent with their identified gender would be in the public interest.
28 But as this Court has found, further revisions to the property policy are necessary to ensure

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

12

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY

constitutional rights are protected. *See* Order at 9:27-12:10; *see also United States v. Raines*, 362 U.S. 17, 27 (1960) ("[T]here is the highest public interest in the due observance of all the constitutional guarantees . . . ."). Further, CDCR has not shown how immediate compliance with the Court's orders would lead to significantly increased inconsistency, especially given that CDCR is already in the process of changing its policy and has acknowledged that this is a long and iterative process.

CDCR also argues that "transgender inmates have an interest in a prolongation of the existing transgender property policy, approved on an emergency basis on April 2, 2017," and expiring on October 5, 2017. (Mot. 8:12-15.) However, it is not clear why CDCR needs a court order to extend its existing transgender property policy. If CDCR is concerned about transgender inmates' access to property items under the near-expiring policies, CDCR surely could extend access, issue new emergency regulations, or pursue sub-regulatory stop-gaps which could additionally comply with the Order while its appeal is pending.

Last, CDCR argues that "if CDCR prevails in its appeal after having promulgated regulations that include the disputed items, transgender female inmates in male institutions would be in possession of contraband items" which may threaten "institutional safety and security." (Mot. 8:19-23.) As explained above, this argument hinges on a debunked premise that the disputed items pose safety or security concerns. They do not. Moreover, the benefits to transgender inmates from having access to these gender-conforming items is in the public interest, and the deprivation of these simple yet critical gender-affirming items is discriminatory and irrational. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted). There is no public interest in transgender inmates' continued suffering during the pendency of the appeal.

## VII.   CONCLUSION

For the foregoing reasons, CDCR's Motion to Stay Order Granting Plaintiff's Motion to Enforce should be denied.

Dated: August 3, 2017                     MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Phillip J. Wiese*
   PHILLIP J. WIESE
   MORGAN, LEWIS & BOCKIUS LLP

*Attorneys for Plaintiff*
SHILOH QUINE

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 31773837.2

14

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO STAY