XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General
MARTINE N. D'AGOSTINO
Deputy Attorney General
State Bar No. 256777
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5233
Fax: (415) 703-5843
E-mail: Martine.DAgostino@doj.ca.gov
*Attorneys for Defendants*
*S. Kernan, S. Pajong, J. Walker, D. Bright, and J. Dunlap*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SHILOH HEAVENLY QUINE, (f/k/a) RODNEY JAMES QUINE,** Plaintiffs, **v.** **SCOTT KERNAN, et al.,** Defendants. | C 14-02726 JST<br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY**<br>Date: September 12, 2017<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge: The Honorable Jon S. Tigar<br>Trial Date: N/A<br>Action Filed: June 12, 2014 |

**INTRODUCTION**

A stay of this Court's post-settlement order is necessary while the parties' appeal and cross-appeal are pending. The order requires the California Department of Corrections and Rehabilitation (CDCR) to revise its existing property policy to: (1) provide access to items that present safety and security concerns in all 35 CDCR institutions, although transgender inmates are housed in the 11 "hub" institutions; (2) allow access to pajamas, nightgowns, robes, scarves, bracelets, earrings, hair brushes, and hair clips; and (3) provide compression tops and binders to inmates who cannot afford them, at state expense. (Order, ECF No. 116.)

Absent a stay, dangerous items will be disseminated throughout California's prisons. Defendants' appeal raises the serious legal question – left open in this Circuit – of *Turner v. Safley's* application to gender discrimination claims involving prison administration. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Additionally, Defendants' appeal raises a substantial case for relief on the merits, given that the settlement agreement's express terms prohibit Plaintiff's requested relief. Plaintiff will not be harmed by a stay, as she is housed in a female institution and has access to all of the disputed property items. And the public interest favors a stay because transgender inmates will benefit from a consistent transgender property policy, and all inmates and staff have a strong interest in a property policy that maintains everyone's safety and security. As such, the balance of hardships tips sharply in Defendants' favor. Defendants respectfully request that their stay motion be granted.

## ARGUMENT

### I. LEGAL STANDARD FOR A STAY PENDING APPEAL.

Federal Rule of Civil Procedure 62(c) authorizes this Court to suspend or modify a preliminary injunction during the pendency of an appeal from an order granting such relief. A stay is a matter of "judicial discretion" governed by "sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009). The party requesting the stay must show "that the circumstances justify" a stay of the injunction pending appeal. *Id.*; *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). The determination of whether to grant a stay depends on four factors: (1) the likelihood that the stay applicant will succeed on the merits; (2) whether irreparable injury will result absent a stay; (3) whether the issuance of a stay will substantially injure other parties' interest in the proceeding; and (4) the effect on the public interest of the issuance or non-issuance of the stay. *Nken*, 556 U.S. at 434. These factors are weighed on a continuum. At one end, "the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (citations omitted). At the other end, the party seeking the stay "must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* As shown below, Defendants' motion meets all these criteria.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Defendants' Appeal Will Raise Serious Legal Questions That Justify a Stay.

A serious legal question of first impression satisfies the likelihood-of-success prong of the stay analysis. *United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, Cal.*, No. 13-CV-02027-JST, 2015 WL 525711, *2 (N.D. Cal. Feb. 6, 2015). Plaintiff concedes that neither the Ninth Circuit nor the Supreme Court has ruled that *Turner* is inapplicable to gender-discrimination claims in the prison context. (ECF No. 152 at 6, 10); *see also Jeldness v. Pearce*, 30 F.3d 1220, 1231 (9th Cir. 1994) (declining to reach the issue).

Plaintiff contends that district courts in the Ninth Circuit have "uniformly" applied intermediate scrutiny to gender-discrimination claims involving matters of prison administration. (ECF No. 152 at 10.) Not so. Courts in this district have applied the *Turner* test to claims of gender discrimination arising out of CDCR's property policy, the very issue presented in Plaintiff's enforcement motion. *See Gonzalez v. Mullen*, N.D. Cal. Case No. 09-0953 CW, 2013 WL 1333560 at *4 (applying *Turner* to male inmate's equal-protection challenge to CDCR's property policy and finding that prohibiting earrings in male institutions is not unconstitutional); *Harrison v. Kernan*, N.D. Cal. Case No. 16-cv-07103 NJV at ECF No. 13 (screening inmate's complaint alleging gender discrimination based on personal property policy and applying *Turner v. Safley)*. Courts in other Circuits have also applied *Turner* to gender discrimination claims in the prison context. *See Veney v. Wyche*, 293 F.3d 726, 731–32 (4th Cir. 2002) ("When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner."); *see also Pargo v. Elliot*, 49 F.3d 1355, 1357 (8th Cir. 1995) (citing *Turner* and stating that deference to prison officials is required in matters of "internal security" and that "courts should not substitute their judgment for that of prison administrators").

Plaintiff contends that the basis for applying strict scrutiny in *Johnson v. California*, 543 U.S. 499 (2005), mandates the application of intermediate scrutiny here. In *Johnson,* the Supreme Court found that "[t]he right not to be discriminated against…need [not] necessarily be compromised for the sake of proper prison administration." *Id.* at 510. But gender classifications

are common and necessary in the prison context – for example, in housing – and neither the Supreme Court nor the Ninth Circuit has ruled that intermediate scrutiny applies to those long-established classifications.

Because Defendants' appeal raises serious legal questions of first impression for the Ninth Circuit, their stay motion should be granted.

**B. Defendants' Appeal Presents a Substantial Case for Relief on the Merits.**

As Defendants argued in their opposition to Plaintiff's enforcement motion, the express settlement agreement terms control any interpretation of the parties' dispute. The agreement states that "[b]efore [the transgender property] policies are final, Plaintiff shall have the opportunity to comment on its specific language, including provisions that limit certain property items that are designated as available to a specific gender only." (Notice of Settlement, ECF No. 49 at 4.) Therefore, Plaintiff's rights concerning the inclusion of specific property items in the policy are expressly limited to "the opportunity to comment," which Plaintiff does not dispute she was afforded on multiple occasions.

Plaintiff's opposition claims that the Court's order reflects an assessment of all credible evidence to interpret what the parties meant by "opportunity to comment" on the draft property policies. (ECF No. 152 at 9.) But the Court's order did not examine the application of the agreement's integration clause. Under California law, when a contract is integrated, oral or written extrinsic evidence may not be used to "vary or contradict" the contract's express terms. *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC,* 185 Cal. App. 4th 1050, 1061 (2010) (citing Cal. Code Civ. Pro. § 1856; *Cerritos Valley Bank v. Stirling*, 81 Cal. App. 4th 1108, 1115-16 (2000).) Nor did the Court's order consider Defendants' on the record statement during the settlement conference that the tentative agreement was "subject to review both by CDCR executives as well as the Governor's Office" and thus only the final written and signed document would reflect the parties' agreement. (ECF No. 63 at 9.) Defendants have demonstrated a likelihood of prevailing because the Court expanded its analysis beyond the four corners of the agreement.

Plaintiff argues that, when she settled this case, she did not waive her right to litigate the constitutional issues presented in her complaint.[1] (ECF No. 152 at 12.) But the settlement agreement is clear: Plaintiff released CDCR, Defendants, and Correctional Health Care Services (CCHCS) "from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint or this lawsuit." (ECF No. 49 at 5.) In the settlement agreement, Defendants expressly disavowed any wrongdoing, and no Court has found otherwise. (*Id.*) Waiver of the right to litigate is the essence of a settlement. Plaintiff's argument defies common sense: if parties are permitted to continue to litigate settled claims after an agreement is negotiated and signed, settlement would be pointless. Defendants do not contend that Plaintiff is precluded from challenging unrelated CDCR policies or procedures on constitutional grounds in future lawsuits. But she expressly released CDCR from the claim alleged in her complaint, namely, a Fourteenth Amendment claim based on denial of access to property that corresponds to her gender identity. (ECF No. 49.)

Because the terms of the settlement agreement do not afford Plaintiff the right to challenge the exclusion of specific property items from the policy, Defendants are likely to succeed on the merits of their appeal and their stay motion should be granted.

## III. ABSENT A STAY, IRREPARABLE HARM WILL RESULT.

Defendants' motion demonstrated "the possibility of irreparable injury" if a stay is not entered.[2] *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (citations omitted). This is a distinct inquiry from whether there is a likelihood that Defendants will prevail on the merits. Defendants have put forward unrebutted evidence that the disputed items will compromise institutional safety and security, and have appealed the Court's

[1] Confusingly, Plaintiff argues that she is entitled to litigate "the constitutionality of the Agreement." (ECF No. 152 at 12.) But she does not identify what provision of the settlement agreement allows her to do so, nor what provision of the agreement she believes is unconstitutional.

[2] As Defendants noted in their stay motion, if the Court finds that serious legal questions satisfy the likelihood-of-prevailing prong, then Defendants must also demonstrate that "the balance of hardships tips sharply in [their] favor." *Golden Gate Rest. Ass'n*, 512 F.3d at 1116; (ECF No. 150 at 3). Defendants' motion easily satisfies this standard, as argued in Sections III. IV. and V.

order requiring that those items to be available in all male prisons. Based on 2015 data, inmates at male institutions commit weapons offenses at twice the rate of inmates at female institutions. (Decl. of A. Miller Supp. Defs.' Opp'n to Mot. to Enforce, ECF No. 104 at 3.) If even one inmate or officer is injured as a result of the dissemination of these dangerous items in prison facilities, that is one too many. Moreover, Plaintiff does not explain why the extreme difficulty of retrieving these small items does not demonstrate irreparable harm. Should Defendants prevail on appeal, retrieving these dangerous property items will be a difficult—if not impossible—task, rendering Defendants' right to appeal meaningless, while compromising institutional safety and security.

Operational needs also justify a stay. Defendants' stay motion shows that custody, medical, and mental health staff who are familiar with transgender inmate needs are clustered at the hub institutions. This type of clustering is common in the prison context. (*See* Special Report: Improvements in the Quality of California's Prison Medical Care System by Receiver J. Clark Kelso, *Plata v. Brown,* N.D. Cal Case No. 3:01-cv-01351 TEH, ECF No. 2840-1 at 54) ("We have designated certain persons that are located near substantial community-based medical resources as 'intermediate institutions' where we can cluster a greater percentage of high risk patients and deliver care more effectively.") As Plaintiff concedes, some inmates may not be comfortable disclosing their transgender status. (ECF No. 152 at 14.) The hub system incentivizes those inmates to identify themselves so that they may be transferred to hub institutions and receive access to treatment services, property and additional resources.

Plaintiff attempts to flip the standard for a stay on its head by arguing that, because Defendants did not prevail in the enforcement motion, they cannot demonstrate irreparable harm. (ECF No. 152 at 13). Plaintiff further contends that the risk of harm if the order is not stayed is "low." (ECF No. 152 at 13.) But <u>any</u> added risk to the safety of inmates or staff is untenable, because Defendants have a constitutional duty to protect all inmates from the risk of physical harm. *Griffin v. Gomez*, 741 F.3d 10, 21 (9th Cir. 2014) ("[T]he Eighth Amendment requires that prison officials must take reasonable measures to guarantee the safety of the inmates.")

Because both the risk of harm to inmates if the disputed items are disseminated throughout the prisons, as well as operational needs support a stay, Defendants' motion should be granted.

## IV. PLAINTIFF CANNOT DEMONSTRATE THAT A STAY 'WILL SUBSTANTIALLY INJURE OTHER PARTIES' INTEREST.'

Plaintiff concedes that she will not be harmed if a stay is issued, because she is housed in a female institution. (ECF No. 152 at 15.) Rather, she argues that other transgender inmates and inmates experiencing gender dysphoria will be harmed. But Plaintiff cites no specific harm that will befall transgender inmates – who are currently benefitting from a revised property policy that allows them greater access to property consistent with their gender identities – if a stay is not entered. And as discussed above, absent a stay, transgender inmates – as well as prison staff – will face new safety risks as a result of the dissemination of dangerous items throughout the 34 prisons. Rather than injuring other parties' interest, the stay will likely protect transgender inmates' safety.

## V. THE PUBLIC INTEREST FAVORS A STAY.

The public interest inquiry primarily addresses impact on non-parties rather than parties. *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003). Here, transgender inmates have an interest in a continuation of the existing transgender property policy, approved on an emergency basis on April 28, 2017. The current policy will expire on October 5, 2017 if not made permanent, and permanent regulations can take up to a year to promulgate. Accordingly, there is a strong public interest in maintaining the existing policy. Plaintiff does not explain what "sub-regulatory stop-gaps" Defendants could "pursue" if the current regulations expire. (ECF No. 152 at 17.) There are none. The public interest favors a stay.

## CONCLUSION

On balance, a stay is warranted. Defendants' appeal raises legal issues of first impression, and regardless, presents a substantial case for relief on the merits. Plaintiff will not be harmed by a stay, and inmates will have access to potentially dangerous items if a stay is not entered. Moreover, consistency in the regulatory scheme supports a stay. Therefore, Defendants' motion for a stay pending appeal should be granted.

Dated: August 10, 2017

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY C. RUSSELL
Supervising Deputy Attorney General

*/s/ Martine N. D'Agostino*
MARTINE N. D'AGOSTINO
Deputy Attorney General
*Attorneys for Defendants S. Kernan, S. Pajong, J. Walker, D. Bright, and J. Dunlap*

SF2015400052
21012656.doc

# CERTIFICATE OF SERVICE

Case Name: **Quine v. Brown, et al,** No. **C 14-02726 JST**

I hereby certify that on August 10, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 10, 2017, at San Francisco, California.

| M. Luna | */s/ M. Luna* |
| --- | --- |
| Declarant | Signature |

SF2015400052
21012790.doc