UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHILOH HEAVENLY QUINE,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, et al.,<br><br>    Defendants. | Case No. 14-cv-02726-JST<br><br>**ORDER DENYING MOTION TO INTERVENE**<br><br>Re: ECF Nos. 117, 130 |

Before the Court is a motion to intervene by thirteen inmates ("Movants") housed[1] in California Department of Corrections and Rehabilitation ("CDCR") prisons. ECF No. 130. Defendants oppose the motion. ECF No. 151. The Court will deny the motion.

The Court previously delayed ruling on a motion for writ of mandate and declaration and injunctive relief filed by twenty other inmates, pending resolution of Movants' motion to intervene. ECF Nos. 117, 120. The Court will now also deny that motion.

## I. INTRODUCTION

In August 2015, Plaintiff Shiloh Quine reached an agreement with Defendants to settle this case. ECF No. 100-1 ("Agreement"). CDCR agreed to:

> [R]eview and revise its policies to allow inmates identified by medical or CDCR personnel as transgender or having symptoms of gender dysphoria access to property items available to CDCR inmates consistent with those inmates' custody and classification factors, including property items that are designated as available to a specific gender only. Before those policies are final, Plaintiff shall have the opportunity to comment on its specific language, including provisions that limit certain property because of safety and security concerns. In addition, CDCR is reviewing and revising its policies

---

[1] Counsel for Movants notes that three of the movants were "unreachable by the time of filing" and, according to state records, appear to have been released on parole. ECF No. 130 at 4.

> concerning medically necessary treatment for gender dysphoria, including surgery.

Agreement Part III.1.G. As relevant to this motion, the Agreement also contains the following limiting provision:

> There are no other actions required by Defendants or CDCR to comply with this Agreement. Except as described in Paragraph 1.G.[2] above, any and all actions taken under this Agreement shall be limited in scope and application to this case and Plaintiff only.

Agreement Part III.2. The Agreement also sets out the following procedure for the resolution of disputes over its enforcement:

> The Court shall retain jurisdiction of this litigation while this Agreement's terms are being executed. Any disputes between the parties concerning this Agreement shall first be presented to Magistrate Judge Nandor J. Vadas for informal dispute resolution without prejudice to a party's right to seek formal relief from the Court

Agreement Part III.1.H.

On November 14, 2016, Movants filed a motion for writ of mandate and declaratory and injunctive relief. ECF No. 82. Generally speaking, Movants sought enforcement of the Agreement. Id. Plaintiff Shiloh Quine filed her own motion to enforce the Agreement on March 1, 2017, ECF No. 98, which the Court granted in part and denied in part on April 28, 2017, ECF No. 116. On April 11, 2017, the Court appointed counsel for Movants for the "the limited purpose of representing the litigants in the course of briefing and hearing the Motion for Writ of Mandate." ECF No. 113 at 1. At the Court's instruction, id., Movants filed this motion to intervene. ECF No. 130.

## II. ANALYSIS

Only intended beneficiaries have standing to sue to enforce a settlement agreement. Hook v. State of Ariz., Dep't of Corr., 972 F.2d 1012, 1014-15 (9th Cir. 1992). Incidental beneficiaries do not have that right. Id.; United States v. FMC Corp., 531 F.3d 813, 820 (9th Cir. 2008) ("In short, under Ninth Circuit precedent, incidental third-party beneficiaries may not enforce consent decrees, but intended third-party beneficiaries may."); GECCMC 2005-C1 Plummer St. Office

---
[2] This is the provision that requires revision of the property policy.

2

Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n, 671 F.3d 1027, 1033 (9th Cir. 2012) ("The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party."). In other words, Movants may only intervene to enforce the Agreement if they were intended beneficiaries of the Agreement.

"To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999). This task is more onerous where the government is a party to the contract. Pursuant to Ninth Circuit authority, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." Id. at 1211. "This 'clear intent' hurdle is a high one. It is not satisfied by a contract's recitation of interested constituencies." GECCMC 2005-C1 Plummer St. Office Ltd. P'ship, 671 F.3d 1027 at 1033.

Here, the Court concludes that Movants have not met their burden to show "clear intent" in the Agreement to make them intended, rather than incidental, beneficiaries. Movants' motion rests principally on the provision of the Agreement that requires CDCR to "review and revise its policies to *allow inmates identified by medical or CDCR personnel as transgender or having symptoms of gender dysphoria* access to property items available to CDCR inmates consistent with those inmates' custody and classification factors, including property items that are designated as available to a specific gender only." Agreement Part III.1.G (emphasis added). Because this provision refers to Movants and because any revisions to the property policy impact Movants, they argue that the Agreement demonstrates a "clear intent" to benefit them.

Other courts, however, have rejected similar claims based on stronger facts. For example, in United States v. FMC Corporation, several Native American tribes ("Tribes") sought to enforce a consent decree between a mining company and the United States. 531 F.3d 813. The Tribes explained that they "were involved in the negotiations concerning the Consent Decree; that the Consent Decree refers to them many times; [and] that the Consent Decree gives the Tribes certain

3

'rights,' such as notification rights and rights of access to FMC's property for specified purposes." Id. at 820-21. Nonetheless, the Ninth Circuit was "not persuaded" that the Tribes were intended beneficiaries. Id. at 821; see also GECCMC 2005-C1 Plummer St. Office Ltd. P'ship, 671 F.3d at 1034 (describing three cases where the Ninth Circuit held third parties were not intended beneficiaries even though, for example, they were "explicitly referred to in and benefitted by the contract and were clearly 'in [the] mind' of the contracting parties"). Here, Movants had no part in the negotiations that culminated in the Agreement; the Agreement mentions them only once; and, although Movants will benefit from any changes to the property policy prompted by Part III.1.G of the Agreement, it does not otherwise explicitly confer on them any rights. If the Tribes were not intended beneficiaries, neither are Movants.

FMC is also analogous to the present case for another reason. In FMC, the Consent Decree required the parties to "proceed through a number of steps" before they could invoke the district court's enforcement jurisdiction. 531 F.3d at 823. But those requirements applied only to named parties. The Ninth Circuit was therefore concerned that "[i]f the Tribes could enforce the Consent Decree directly, the Tribes could hale the parties into federal court without invoking any of the prescribed dispute resolution mechanisms." Id. The Ninth Circuit doubted that "the Consent Decree could have intended to grant a broader range of dispute-resolving rights to the Tribes than to the parties themselves." Id. (citing Williston on Contracts § 37.23, pp. 147–49 (4th ed. 2000) ("It is clear that a third party beneficiary's right to enforce a contract cannot rise higher than the rights of the contracting party through whom he claims.")). Similarly here, the Agreement obligates the parties to present their disputes to Magistrate Judge Vadas before they can seek "formal relief" from the Court. As in FMC, it is unlikely that those parties intended to give Movants greater dispute resolution rights than the parties gave themselves.

Cooper v. California, from this district, provides an even closer analogy. There, the original plaintiff, an inmate at a California prison, sued the State for failing to provide him with kosher meals. No. C 02-03712 JSW, 2007 WL 1703829, at *1 (N.D. Cal. June 12, 2007). The parties reached a settlement agreement that required CDCR to implement a kosher diet program at the plaintiff's prison (Solano), make a "good faith" effort to provide kosher meals at its other prisons, and gave Solano inmates who participated in the kosher diet program the right to seek

4

judicial enforcement of the terms of the Settlement Agreement, among other things. Id. Three inmates subsequently filed motions to enforce the settlement agreement, one of whom was not housed at Solano. Id. at *2. The district court concluded that the inmate lacked standing to bring the motion, explaining that although the agreement explicitly gave Solano inmates the right to enforce, it did not do so for inmates at other prisons. Id. Therefore, the court explained, there was "no clear expression of intent" with respect to those inmates. Id. Because the government was a party to the settlement agreement, the absence of clear intent was fatal to the prisoner's motion. The court determined that the moving inmate was an incidental beneficiary who lacked standing to enforce the settlement agreement. Id. As in Cooper, Movants stand to benefit from the Agreement, but the Agreement does not expressly contemplate that they can bring suit to enforce it. In fact, the one provision that relates to enforcement, Part III.1.H, provides that the Court retains jurisdiction over "disputes between the parties." Movants are not parties to this case. To be sure, in Cooper, the incidental beneficiary status of non-Solano inmates was made clearer by the fact that Solano inmates expressly had the right to enforce the agreement. In this case, no non-party is expressly given that right. Nevertheless, the Court cannot conclude that the Agreement expresses a "clear intent" to make Movants intended beneficiaries and thereby "rebut[s] the presumption that [they] are merely incidental beneficiaries." GECCMC 2005-C1 Plummer St. Office Ltd. P'ship, 671 F.3d at 1033. Movants have cited no case with similar facts where a third party was found to have standing as an intended beneficiary.

At the hearing on this motion, movants placed great weight on Hook. In that case, a group of Arizona state prison inmates filed suit to enjoin the enforcement of prison mail regulations that conflicted with an earlier consent decree. 972 F.2d at 1013. The State opposed the request on the ground that, *inter alia,* even though the inmates were intended beneficiaries of the consent decree, they had no standing to enforce it because they were not parties to the original case. The Ninth Circuit disagreed, and held that the inmates did have standing. Id. at 1017. Hook does not assist Movants. In that case, defendant Department of Corrections *conceded* that inmates as a group, who were expressly identified as beneficiaries of the consent decree, were intended beneficiaries of that decree. 972 at 1015. That distinction by itself is dispositive.

Because Movants are mere incidental beneficiaries, they lack standing to intervene to

enforce the Agreement. The Court therefore does not address separately the elements of intervention under Federal Rules of Civil Procedure 24 (a) and (b).

## CONCLUSION

The motion to intervene, ECF No. 130, is denied. Non-party prisoners do not have standing to enforce the Agreement. For the same reason, the separately filed motion for writ of mandate and declaration and injunctive relief, ECF No. 117, is also denied.

IT IS SO ORDERED.

Dated: September 13, 2017

_____
JON S. TIGAR
United States District Judge