FILED

JUN 29 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHILOH HEAVENLY QUINE, FKA Rodney James Quine,<br><br>  Plaintiff-Appellee,<br><br> and<br><br>MICHAEL HERNANDEZ CONTRERAS; et al.,<br><br>  Intervenor-Plaintiffs,<br><br>v.<br><br>SCOTT KERNAN, Secretary of California Department of Corrections and Rehabilitation; et al.,<br><br>  Defendants-Appellants. | No. 17-16148<br><br>D.C. No. 3:14-cv-02726-JST<br><br>MEMORANDUM[*] |
| SHILOH HEAVENLY QUINE, FKA Rodney James Quine,<br><br>  Plaintiff-Appellant,<br><br> and | No. 17-16212<br><br>D.C. No. 3:14-cv-02726-JST |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

MICHAEL HERNANDEZ CONTRERAS; et al.,

       Intervenor-Plaintiffs,

v.

SCOTT KERNAN, Secretary of California Department of Corrections and Rehabilitation; et al.,

       Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted June 13, 2018
San Francisco, California

Before: MURPHY,[**] PAEZ, and IKUTA, Circuit Judges.

The California Department of Corrections and Rehabilitation (CDCR) appeals a district court order enforcing a settlement agreement between CDCR and plaintiff Shiloh Quine. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

The district court erred in concluding that CDCR breached its obligations under Section 1(G) of the settlement agreement, which states:

---

    [**]    The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

2

> CDCR shall review and revise its policies to allow
> inmates identified by medical or CDCR personnel as
> transgender or having symptoms of gender dysphoria
> [referred to hereafter as "Identified Inmates"] access to
> property items available to CDCR inmates consistent
> with those inmates' custody and classification factors,
> including property items that are designated as available
> to a specific gender only. Before those policies are final,
> Plaintiff shall have the opportunity to comment on its
> specific language, including provisions that limit certain
> property because of safety and security concerns.

CDCR fully complied with the requirements in Section 1(G) to review and revise its policies. CDCR reviewed and revised its regulations to allow Identified Inmates to "possess the state-issued clothing that corresponds to their gender identities in place of the state-issued clothing that corresponds to their assigned sex at birth at designated institutions," Cal. Code Regs. tit. 15, § 3030(c), as well as creating the "Transgender Inmates Authorized Personal Property Schedule" (TIAPPS), a property schedule for Identified Inmates that significantly expanded the list of available items. *Id.* § 3190(d). CDCR also fully complied with the requirement to give Quine "the opportunity to comment" on the regulation and TIAPPS' specific language before they were finalized; CDCR then revised its policies in response to these comments.

The district court erred in concluding that even after CDCR's policies were final, Quine could raise arguments that the list of property items in TIAPPS was

3

unsatisfactory. The settlement agreement states that CDCR would provide access "to property items available to CDCR inmates," but did not otherwise specify which property items would be included, other than that the list would include "items available to CDCR inmates consistent with those inmates' custody and classification factors." Nor did the settlement agreement state that Quine could raise a dispute with respect to items not included on the list. Therefore, Quine's argument that the list of property items in TIAPPS is unsatisfactory is not a dispute between the parties concerning the Agreement.

The district court's conclusion that it could consider extrinsic evidence to alter the settlement agreement is erroneous. We review de novo whether a written contract is reasonably susceptible of a proffered meaning. *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). Because the district court relied solely on the undisputed transcript of a settlement conference and did not make any credibility determinations or fact finding, we likewise review the district court's evaluation of the extrinsic evidence de novo. *See Winet*, 4 Cal. App. 4th at 1166 ("[W]hen the competent parol evidence is not conflicting, construction of the instrument is a question of law, and the appellate court will independently construe the writing."); *see also L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989)

4

(explaining that, although an appellate court must defer to a trial court's "findings of fact," the "principles of contract law applied to those facts are reviewed de novo"); *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 632 (9th Cir. 1984) ("When the interpretation includes a review of factual circumstances surrounding the contract, the principles of contract interpretation applied to those facts present issues of law which this court can freely review."). Reviewed de novo, the language in the settlement agreement giving Quine "the opportunity to comment" on the revised property policy before it was final is not reasonably susceptible of an interpretation that Quine "could dispute the exclusion of particular property items from CDCR's policy," as deficient under the Equal Protection Clause, or argue that CDCR's revision of its policies was otherwise defective. *Cf. Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006). Any statement made by CDCR's counsel before the settlement agreement was executed constituted at most a different agreement that cannot be admitted to contradict the integrated settlement agreement. *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 344 (2004). Therefore, we reverse the district court's order requiring CDCR to incorporate certain items into the TIAPPS.

Finally, even if Quine could bring an equal protection claim after entering into a settlement agreement that released all such claims, Quine would lack

standing to contest the exclusion of particular items from TIAPPS under the Equal Protection Clause. Quine is housed in a female institution and has access to all of the items that are denied to inmates housed in male institutions. Therefore, CDCR's policies do not inflict a concrete or particularized injury on Quine. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016). Because Quine lacks standing to raise an equal protection claim, we need not reach the parties' arguments regarding the appropriate standard of scrutiny for evaluating such claims.

The district court also erred in holding that CDCR breached the settlement agreement by not providing state-issued compression tops and binders to Identified Inmates at state expense. Compression tops and binders are not "property items available to CDCR inmates . . . that are designated as available to a specific gender only." Rather, the list of state-issued property and Authorized Personal Property Schedules (APPS) for male and female inmates do not include any compression tops or binders.[1] Therefore, the failure to provide compression tops and binders at state expense does not violate the settlement agreement.

---

[1] *See* Cal. Code Regs. tit. 15, § 3030(b); *Authorized Personal Property Schedule*, CDCR (Apr. 1, 2014), 15–16, 45–47. https://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/ DOM/DOM%202018/APPS-Rev-4-1-14.pdf.

The record does not provide sufficient information to determine whether CDCR gives all Identified Inmates "access to property items available to CDCR inmates consistent with those inmates' custody and classification factors" as required by the settlement agreement, or whether CDCR limits Identified Inmates' access to such property based on criteria that is inconsistent with the settlement agreement. At oral argument, CDCR conceded that the evidence necessary to decide this issue was not in the record. Therefore, we vacate the district court's order that CDCR revise its policy to provide access to property at non-hub institutions, and remand for further evidentiary development.

We affirm the district court's conclusion that only medical or mental health staff may identify an individual as transgender or experiencing symptoms of gender dysphoria. The settlement agreement's statement that Identified Inmates must be "identified by medical or CDCR personnel" is reasonably susceptible to the interpretation that only CDCR mental health personnel can make such identification, the parties submitted conflicting extrinsic evidence on this point, and the court's conclusion that such an interpretation reflects the parties intent was supported by substantial evidence. *Winet*, 4 Cal. App. 4th at 1165–66.[2]

---

[2] Each party will bear its own costs on appeal.

**AFFIRMED in part, VACATED and REMANDED in part, and REVERSED in part**